BURTON TOWNSHIP *v.* SPECK

DISSENTING OPINION.

DETHMERS, SOURIS, and ADAMS, JJ.

1. LIMITATION OF ACTIONS—PERSON ON BOTH SIDES OF CLAIM—TOLLING OF STATUTE.

*The statute of limitations is tolled when the same person is on both sides of a claim (CLS 1961, § 600.5813).*

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  34 Am Jur, Limitation of Actions §§ 186–189, 237.
[2]  52 Am Jur, Towns and Townships, §§ 15, 19.
[3]  34 Am Jur, Limitation of Actions §§ 395, 397; 43 Am Jur, Public Officers § 503.
[4]  34 Am Jur, Limitation of Actions § 395; 52 Am Jur, Towns and Townships §§ 48, 49.
[5, 11] 34 Am Jur, Limitation of Actions §§ 395, 397; 43 Am Jur, Public Officers §§ 503, 504.
[6, 7, 21] 34 Am Jur Limitation of Actions § 231.
[8]  42 Am Jur, Public Officers § 3.
[9]  52 Am Jur, Towns and Townships §§ 15, 16, 19.
[10]  52 Am Jur, Towns and Townships §§ 19, 20.
[12]  52 Am Jur, Towns and Townships §§ 20, 22, 23.
[13]  52 Am Jur, Towns and Townships §§ 19, 22–25.
[14, 15] 52 Am Jur, Towns and Townships § 22.
[16]  52 Am Jur, Towns and Townships §§ 24, 25.
[17, 18] 52 Am Jur, Towns and Townships §§ 22–25.
[19]  42 Am Jur, Public Officers §§ 70–72, 74.
[20]  42 Am Jur, Public Officers §§ 70–72, 74; 52 Am Jur, Towns and Townships §§ 15, 16.
[22, 23] 34 Am Jur, Limitation of Actions §§ 231, 395, 397; 43 Am Jur, Public Officers §§ 503, 504.
[24]  37 Am Jur, Municipal Corporations §§ 111, 112.
[25]  52 Am Jur, Towns and Townships §§ 22, 23.
[26, 27] 52 Am Jur, Towns and Townships §§ 18, 22, 23; 43 Am Jur, Public Officers §§ 340, 341, 344, 345.
[28]  5 Am Jur 2d, Appeal and Error § 1009.

2. Townships—Supervisor as Legal Agent.

   The supervisor of a township is, by law, the township agent for the transaction of its legal business (CL 1948, § 41.64a).

3. Limitation of Actions—Township Board—Supervisor.

   Statute of limitations was tolled in suit to recover money alleged to be wrongfully taken by township board members, where the board members, including the supervisor, who by law was the township agent for the transaction of its legal business, were all participants in the actions complained of and the supervisor obviously would not be disposed to sue himself (CL 1948, § 41.64a, CLS 1961, § 600.5813).

4. Parties—Substitute for Supervisor—Townships—Statutes.

   All possible objections to onerous provisions of statute authorizing taxpayers' action against public officers of township must be met before it becomes permissible for party substituted for the supervisor to sue so as to toll statute of limitations, a taxpayer's interest being very minute (CL 1948, §§ 41.64a, 129.61).

5. Limitation of Actions—Taxpayers' Action—Tolling of Statute.

   Holding of lower courts that statute of limitations was not tolled because taxpayers had access to township board meetings and minutes and had a right to start suit to recover money alleged to have been wrongfully taken by board members held, not to be well taken, since the statute was tolled, where there was insufficient disclosure for a taxpayers' suit, there being no itemized or verified accounts filed so as to be available for inspection, and township records gave every appearance of regularity on their face, being open records, that were presumably kept in accordance with the law (CL 1948, §§ 41-.64a, 41.75, 129.61; CLS 1961, § 600.5813).

6. Same—Fraudulent Concealment—Tolling of Statute—Fiduciary.

   General rule, that statute of limitations will not be tolled unless the concealment of the cause of action is designed to mislead and is accompanied by affirmative steps to that end, does not apply to one occupying a fiduciary or confidential relationship and nothing occurs to indicate the necessity for investigation (CLS 1961, §§ 600.5813, 600.5855).

7. Same—Fraudulent Concealment—Tolling of Statute.

   Failure of defendants, members of township board, to make an affirmative disclosure of the cause of action when they were

*under a fiduciary relationship with taxpayers held, to amount to a fraudulent concealment of the cause of action which tolled the statute of limitations until the cause of action was discovered (CLS 1961, § 600.5855).*

8. OFFICERS—PUBLIC TRUST.
   *A public office is a public trust.*

9. TOWNSHIPS—BOARD MEMBERS—LOYALTY TO PUBLIC—PRINCIPAL AND AGENT.
   *Defendant township board members owed, as public officers, a duty of loyalty to the public no less than that of an agent to his principal.*

10. SAME—DUTY OF BOARD—EXPENSES—TAXPAYERS' SUIT.
    *Township board is the watchdog of the township purse with duty to meet annually and quarterly, to audit correctly all accounts, and it may not escape the consequences of its failure to perform that duty, particularly as to its own expenses and salary, merely because a taxpayer might have started suit (CL 1948, § 41.72; CLS 1961, § 41.72a; CL 1948, §§ 41.73, 41.75).*

11. SAME—TOLLING OF STATUTE—PUBLIC RECORD.
    *Holding by lower courts that suit by township supervisor against former supervisor and members of the township board to recover money allegedly misappropriated by them over a period of years was barred by statute of limitations by reason of the public record of their actions held, not supported by the record of the suit, since a public record does not necessarily cause the statute to run if it is insufficient to put the taxpayers on notice, and public records involved all purported to be proper on their face, correctly examined and audited by defendants, and only careful examination of them by an accountant together with legal advice revealed the significance of the activities now challenged (CL 1948, § 41.72; CLS 1961, § 41.72a; CL 1948, §§ 41.73, 41.75; CLS 1961, §§ 600.5813, 600.5855).*

12. SAME—INVESTIGATION BY ATTORNEY GENERAL—STATUTES.
    *Statute authorizing investigation of township books and officers by the attorney general or prosecuting attorney upon application of 25% of the electors has no application to action by new supervisor against former supervisor and township board members to recover money defendants had obtained from the township (CL 1948, § 14.141 et seq.).*

13. Same—Township Board—Creation of Public Office—Constitution—Statutes.

The authority for the creation by township board of a public office with separate salary attached must be found in either the Constitution or statute.

14. Same—Organized Township Power.

An organized township had no power except that prescribed by law under the 1908 State Constitution.

15. Same—Township Board—Constitution—Legislature.

A township board has no power by constitutional mandate under the 1908 State Constitution, deriving its sole authority from the legislature.

16. Same—Prudential Affairs—Statute or Usage.

The "prudential affairs" of a township embrace those subjects affecting the accommodation and convenience of the inhabitants which have been placed under the jurisdiction of townships by statute or by usage, and it must be usage, reasonable in itself, general amongst all townships of like situation, as to settlement and population, and of long continuance (CL 1948, § 41.4).

17. Same—Statutes—Grant and Limitation of Township Powers.

Statutes pertaining to police and fire protection, township park management, and township zoning evidence a clear intention by the legislature to authorize township handling of such matters in specific ways provided therein, and such statutes are the grant and limitation of a township's powers in such matters (CLS 1961, § 41.441, 41.751 et seq.; CL 1948 and CLS 1961, § 125.271 et seq.).

18. Same—Commissionerships—Recovery of Payment.

Statute empowering township board to audit and allow such compensation to township officers for services rendered to townships not otherwise provided by law, limited to services rendered in the duties of their respective offices, does not authorize the creation of commissionerships which members of the township board may hold while continuing as such members, hence, payments made for services rendered as commissioners may be recovered (CL 1948, § 41.96).

19. Officers—Incompatible Offices.

Offices are incompatible when the holder of one can pass upon the salary payable to the incumbent of another office or otherwise supervise the other officer.

20. TOWNSHIPS—TOWNSHIP BOARD MEMBERS—POLICE AND FIRE
COMMISSIONERS.

*The office of township board member is incompatible with that*
*of commissioners of fire, police, parks, and building inspection,*
*where the salaries of the commissioners are set by the town-*
*ship board.*

OPINION OF THE COURT.

21. LIMITATION OF ACTIONS—FRAUDULENT CONCEALMENT.

Fraudulent concealment, to effect tolling of the general statute
of limitations as to personal actions, requires the employment
of artifice, planned to prevent inquiry or escape investigation,
and mislead or hinder acquirement of information disclosing a
right of action, and the acts relied on must be of an affirma-
tive character and fraudulent (CLS 1961, §§ 600.5813).

22. SAME—FRAUDULENT CONCEALMENT—TOWNSHIP OFFICERS—MIN-
UTES OF MEETINGS—INSPECTION—PUBLIC RECORD.

Fraudulent concealment by present and former township board
members, defendants in action brought by newly-elected super-
visor to recover alleged illegal salaries and expense allowances
paid them during a period more than 6 years prior to com-
mencement of action, *held,* not established so as to toll
statute of limitations, where the activities of the annual
meetings of electors authorizing employment of township
board members as commissioners and activities of the town-
ship board of which complaint was made were matters of
public record appearing in the official minutes of the town-
ship board meeting and in the minutes of the annual meetings
of the electors, which minutes were kept at the township
office, were available for inspection by any citizen, and the
minutes of the previous meeting were read at the township
board and annual meetings that were open to the general public
(CLS 1961, §§ 600.5813, 600.5855).

23. SAME—TOWNSHIP OFFICERS—EVIDENCE OF FRAUDULENT CONCEAL-
MENT.

The statute of limitations tolled claims of plaintiff township, by
its newly-elected supervisor against present and former town-
ship board members on all actions set forth in the complaint
which occurred prior to 6 years previous to commencement of
the action, where there is no evidence presented in the record
to show employment of artifice planned to prevent inquiry
or escape investigation and to mislead or hinder acquirement
of information disclosing a right of action (CLS 1961, §§ 600-
.5813, 600.5855).

24. MUNICIPAL CORPORATIONS—EXPRESS, IMPLIED, INCIDENTAL, AND
ESSENTIAL POWERS.

A municipal corporation can exercise no powers except such as
are granted by express words, or such as are fairly implied
in, incident to those expressly granted, or such as are essen-
tial to, the declared objects or purposes of the corporation.

25. TOWNSHIPS—INCIDENTAL AND ESSENTIAL POWERS—CREATION OF
OFFICES OF COMMISSIONERS.

The creation of the offices of township commissioner of fire,
commissioner of police, commissioner of buildings, parks, and
grounds, and commissioner of building inspection, zoning
regulation, and enforcement, although not explicitly author-
ized by statute relate to functions essential to the effective
management of township affairs and are incident to the
legislative grant of power to township inhabitants to make
orders and bylaws for "directing and managing the prudential
affairs of the township, as they shall judge most conducive to
the peace, welfare, and good order" of the township (CL 1948,
§ 41.4).

26. SAME—STATUTES—POWERS OF TOWNSHIP BOARDS—OVERREACH-
ING—COMPENSATION.

The statute empowering the township board to audit and allow
such compensation to township officers for services rendered
to townships not otherwise provided by law as the board
shall deem reasonable vests a wide latitude in such boards,
not only to decide what services are compensable, but also to
decide the amount of compensation, and if overreaching is
invited by such latitude, such is a matter for legislative, not
judicial, action (CL 1948, § 41.96).

27. SAME—TRUSTEES—COMMISSIONERS—STATUTES.

Action of township trustees in determining their appointment
and salaries as township commissioners held, within wide
latitude accorded township board pursuant to authority con-
ferred at annual meetings of electors (CL 1948, § 41.96).

28. COSTS—PUBLIC QUESTION—TOWNSHIP BOARD—INCOMPATIBLE
OFFICES.

No costs are allowed in action by township, by its newly-elected
supervisor, against present and former members of township
board to recover salaries alleged to have been paid illegally
and for services rendered by members of the board appointed
to offices alleged to be incompatible, a public question being
involved,

Appeal from Court of Appeals, Division 2; Watts, P. J., and J. H. Gillis and Quinn, JJ., affirming Genesee, McGregor (Louis D.), J. Submitted June 9, 1966. (Calendar No. 5, Docket No. 51,327.) Decided August 24, 1966.

1 Mich App 339, affirmed.

Complaint by Burton Township, Genesee County, by Joseph E. Uvick, legal agent, against John L. Speck, Paul A. Rauch, Joseph P. Richvalsky, Stephen Dodge, Herbert Winstanley, Inez McPhee, and Jack Keene to recover funds allegedly misappropriated by defendants, former or present township officers. Summary judgment for defendants affirmed by Court of Appeals. Plaintiff appeals. Affirmed.

*Joseph P. Uvick (Harold Goodman,* of counsel), for plaintiff.

*Milliken & Magee (David S. Magee,* of counsel), for defendants.

ADAMS, J. (*dissenting*). On July 1, 1963, a new supervisor of Burton township, Genesee county, brought this suit to recover money that defendants, members of the Burton township board prior to April, 1963, had obtained from the township.

Beginning April 1, 1946, the electors of the township board annually voted a *fixed* expense allowance to board members. CL 1948, § 41.75 (Stat Ann 1961 Rev § 5.67) provides in part:

"No accounts shall be audited by such board, except such as are made in writing, *giving the particular items of such account,* and verified by oath

or affirmation of the claimant or some one in his behalf." (Emphasis supplied.)

Expense allowances were paid from April, 1946, until April, 1957, even though the members filed no itemized accounts.

On April 15, 1947, the township board created four commissionerships which were designated as health officer; purchasing agent and fire commissioner; public safety and park commissioner; and chairman of study commission; and later designated as commissioner of fire; commissioner of police; commissioner of buildings, parks and grounds; and commissioner of building inspection, zoning regulation and enforcement. These positions were paid expense allowances or salaries that ranged from $150 a year in 1947 to $175 a month in 1963.

Beginning in 1957, at the annual town meeting the electors, on motions made by defendant board members, authorized appointment of and salaries for commissioners. Appointments were then made by the supervisor with board approval. Electors are authorized by statute to determine the compensation of members of the township board. CLS 1961, § 41.95 (Stat Ann 1961 Rev § 5.82).

Prior to April, 1959, the township treasurer received his statutory collection fee for the collection of taxes. Until April, 1957, the township board also voted and paid him a fixed expense allowance and an annual salary which was contrary to the requirement of CL 1948, § 211.44 (Stat Ann 1950 Rev § 7.87) that:

"All fees collected by the township treasurer in townships where the treasurer shall receive a salary, shall be credited to the contingent fund of the township."

In April, 1959, the treasurer was placed on a salary in lieu of fees. CL 1948, §§ 211.44, 211.44a (Stat Ann 1950 Rev §§ 7.87, 7.88), as amended.

At the conclusion of plaintiff's case, defendants moved for a judgment as to all claims occurring prior to July 1, 1957, because of the running of the six-year statute of limitations.[1]  The trial judge found that the expenses were matters of public record and granted the motion. Defendants then moved for judgment as to the remainder of the claims. The trial judge found there was no incompatibility in holding both the offices of trustee and commissioner and granted the motion. The Court of Appeals affirmed. *Burton Township* v. *Speck,* 1 Mich App 339. Leave to appeal was granted by this Court.

## I.

Was the statute of limitations suspended?

Plaintiff maintains that the statute of limitations does not operate when the same person is on both sides of a claim and that operation of the statute was suspended because the former supervisor represented both sides of these claims. This rule has been applied in many cases in other jurisdictions. See 54 CJS, Limitation of Actions, § 111, p 16; 34 Am Jur, Limitation of Actions, § 114, p 93.

A corollary of the rule was applied in *Parks* v. *Norris,* 101 Mich 71, where it was held that until an administrator of an estate was appointed no person was authorized to bring an action for the estate.

Until plaintiff was elected to the township board, the board members were all participants in the actions upon which this suit is based. Of their number was the supervisor who, by law, was the township

[1] See CLS 1961, § 600.5813 (Stat Ann 1962 Rev § 27A.5813).—
REPORTER.

agent for the transaction of its legal business. CL 1948, § 41.64a (Stat Ann 1961 Rev § 5.56). He was on both sides and obviously would not be disposed to sue himself.

Defendants say, however, that since any taxpayer could have brought a suit on the authority of CL 1948, § 129.61 (Stat Ann 1958 Rev § 5.3281), there were people who could have sued and so the statute of limitations continued to run. CL 1948, § 129.61 provides:

"Any person or persons, firm or corporation, resident in any township or school district, paying taxes to such political unit, *may* institute suits or actions at law or in equity on behalf of or for the benefit of the treasurer of such political subdivision, *for* an accounting and/or *the recovery of funds or moneys* misappropriated or *unlawfully expended* by any public officer, board or commission of such political subdivision. *Before* such suit is instituted a demand shall be made on the public officer, board or commission whose duty it may be to maintain such suit followed by a neglect or refusal to take action in relation thereto. *Security for costs* shall be filed by the plaintiff or plaintiffs in any such suit or action and *all costs and expenses* of the same shall be paid by the person or persons instituting the same unless and until a recovery of such funds or moneys be obtained as the result of such proceedings." (Emphasis supplied.)

The requirements of this statute are onerous. Any finding that the permission granted to a taxpayer to sue provided a substitute party for the supervisor, the township's designated agent, must meet all possible objections.

In *Nahikian* v. *Mattingly*, 265 Mich 128, an individual shareholder's right to bring suit on behalf of a corporation against its president did not cause the statute of limitations to run where the president

dominated the corporation, was in a position of trust, and held assets that belonged to the corporation. The principle of estoppel was relied upon in *Nahikian* with the result that a small shareholder was not required to assert a claim within the statutory time because he could only minutely benefit. In the case of the ordinary taxpayer, his interest is even more minute. Such minimal interest is one reason why the supervisor's duty to represent the township should not be shifted.

Even if a taxpayer's right to sue did continue the running of the statute of limitations, the statute was tolled in this case because there was an insufficient disclosure for such a suit. The trial judge and the Court of Appeals found that because the public had access to the minutes of the annual town meeting and the township board meetings, and because taxpayers were allowed freely to attend all meetings, there was a full disclosure. However, as already noted, CL 1948, § 41.75 (Stat Ann 1961 Rev § 5.67) provides:

"No accounts shall be audited by such board, except such as are made in writing, giving the particular items of such account, and verified by oath or affirmation of the claimant or someone in his behalf."

It also provides:

"All accounts audited by such board shall be filed and preserved by the clerk, for the inspection of any of the inhabitants of the township or of any persons liable to pay taxes therein, and shall be produced at the next annual township meeting and there read by him, if the same shall be required by the meeting."

No itemized and verified accounts were filed so as to be available for inspection. Yet the township records gave every appearance of regularity on their face, being open records that were presumably kept in accordance with the law.

While, as a general rule, concealment must be designed to mislead and must be accompanied by affirmative steps to that end (*McNaughton* v. *Rockford State Bank,* 261 Mich 265, 268, 269), there is an exception as to one in a fiduciary or confidential relationship. *Johnson* v. *Provincial Insurance Company of Toronto,* 12 Mich 216, 222, 223 (86 Am Dec 49); *Tompkins* v. *Hollister,* 60 Mich 470, 479; *Barrett* v. *Breault,* 275 Mich 482, 491; Comment note.— What constitutes concealment which will prevent running of statute of limitations, 173 ALR 576, 588. In such a case, silence can amount to fraudulent concealment. *Barrett* v. *Breault, supra.*

A public office is a public trust. Defendants were public officers. They owed, at the least, a duty of loyalty to the public no less than that of an agent to his principal. *People, ex rel. Plugger,* v. *Township Board of Overyssel,* 11 Mich 222, 225; 43 Am Jur, Public Officers, § 261, p 78; Comment note, *supra,* p 606. The duties of a township board are: (1) to meet annually (CL 1948, § 41.72 [Stat Ann 1961 Rev § 5.64]), (2) to hold at least one regular meeting every three months (CLS 1961, § 41.72a [Stat Ann 1961 Rev § 5.64(1)]), and (3) to examine and audit accounts (CL 1948, § 41.73 [Stat Ann 1961 Rev § 5.65]). The duty to examine and audit accounts was that of the board, not of a taxpayer. The township board, having been appointed the watchdog of the township purse with the duty to audit correctly all accounts, may not escape the consequences of its failure to perform that duty, particularly as to its own expenses and salary, merely because a taxpayer might sue. To come to such a result would only encourage dereliction of duty in public office.

In any event, a public record does not necessarily cause the statute to run if it is insufficient to put the taxpayers on notice. This Court has held:

"We recognize the general rule that the running of the statute will not be postponed if the defrauded person may discover the fraud from public records. This rule does not apply to a person while a fiduciary relationship exists and nothing occurs to indicate the necessity for investigation." *Heap* v. *Heap,* 258 Mich 250, 263.

Also, see Annotation, Public records as notice of facts started running of statute of limitations against action based on fraud, 137 ALR 268. Here, the public records all purported to be proper on their face, correctly examined and audited by defendants, and only careful examination of them by an accountant together with legal advice revealed the significance of the activities now challenged.

Divided compensation, at the least, presents a delusive picture. For example, trustee Joseph P. Richvalsky was on the board until April, 1963. He received $2,400 as a trustee, but he received $16,641.80 as a commissioner and $1,241.80 for expenses. While his salary appears to be only $2,400, his total compensation was $20,283.60. Because the defendants were fiduciaries whose positions demanded of them the utmost rectitude, their actions constituted fraudulent concealment within the exception of the statute. CLS 1961, § 600.5855 (Stat Ann 1962 Rev § 27A.5855).

PA 1929, No 52, as amended (CL 1948, § 14.141 *et seq.* [Stat Ann 1961 Rev § 3.241 *et seq.*]), authorizing suits by the attorney general or a prosecutor, has no application here since a petition signed by at least 25% of the registered electors of the township is required to initiate such action.

## II.

Could the commissionerships be created?

Defendants would now designate the position of a commissioner as "committee chairman" and would pose the above question as follows:

"May a township Board designate certain of its members as commissioners to act as an arm of the board in administering the affairs of the township?"

The question assumes that the office of commissioner was not a distinct office but merely an adjunct to the board.

The board's authority for the creation of a public office with separate salary attached, by whatever title designated, must be found in either the Constitution or statute. 37 Am Jur, Municipal Corporations, § 226, pp 856, 857; 62 CJS, Municipal Corporations, § 465, p 896. Under the 1908 Constitution, an organized township had no power except that prescribed by law, *Hanslovsky* v. *Township of Leland*, 281 Mich 652, 655; and a township board had no power by constitutional mandate, deriving its sole authority from the legislature, *Township of Dearborn* v. *Dearborn Township Clerk*, 334 Mich 673, 685.

The Court of Appeals found authority for the creation of these commissionerships in CL 1948, § 41.4 (Stat Ann 1961 Rev § 5.4), which provides:

*"The inhabitants of each township may,* at any legal meeting, *by a vote of the qualified electors* thereof, make all such orders and by-laws for determining the time and manner in which cattle, horses, swine, sheep and other animals shall be restrained from going at large in the highways, *and for directing and managing the prudential affairs of the township* as they shall judge most conducive to the peace, welfare and good order thereof." (Emphasis supplied.)

This section has been carried unchanged from RS 1846, ch 16, § 4.

*Spaulding* v. *City of Lowell* (1839), 40 Mass 71, is the leading decision defining and describing the meaning of "prudential affairs" as the term has been used with regard to municipal government. The supreme court of Massachusetts said, pp 77, 78, 79:

"In the case of *Willard* v. *Newburyport,* above cited, [29 Mass 227] some attempt was made to describe what is understood to be 'prudential concerns,' by stating that it embraces those subjects affecting the accommodation and convenience of the inhabitants, not otherwise specifically provided for, *which have been placed under the jurisdiction of towns by statute or by usage.* It may be suggested that referring to usage as a source of this power, is still leaving subjects open to doubt. It does so; but as there are some subjects which have long been regarded as within the authority of towns, not made so by statute, and as such powers have never been questioned, there is no authority whence they can be derived but usage. * * * The same statute [the provincial act of 1692] gives to towns the authority to make orders and by-laws, 'for managing and ordering their prudential affairs of such town, as they shall judge most conducing to the peace, welfare and good order thereof.' From this and various other legal provisions, we think it will be found that towns were not originally incorporated with specific and enumerated powers; but that the inhabitants and settlers of each township, as organized bodies, adopted regulations for their common convenience, and when they were incorporated, or rather recognized by general laws, as established corporations, the powers which they had thus been used and accustomed to exercise, were referred to, and confirmed, under the very broad and comprehensive term, 'prudential concerns.' * * *

"And in considering this subject of usage, it is proper to add, that it is not a casual or occasional exercise of a power, by one or a few towns, which will constitute such a usage; but it must be a usage, reasonable in itself, general amongst all towns of like situation, as to settlement and population, and of long continuance." (Emphasis supplied.)

The phrase "prudential affairs" was intended to empower the electors to do those things necessary to effectuate the *lawful powers* of the township. See 35 Words and Phrases (Perm ed), Prudential Affairs of Town, p 6. The term is more one of limitation than a grant of authority. *Spaulding* v. *City of Lowell, supra.*

Defendants state that Burton township has a population of approximately 36,000 people and the commissionerships are necessary because of the "complexities of modern metropolitan township governments." No long and established usage is shown here.

Under PA 1951, No 57 (CLS 1961, § 41.751 *et seq.* [Stat Ann 1958 Rev § 5.2640(21) *et seq.*]), the State legislature has provided alternative ways to meet the problems of police and fire protection in townships. Whatever procedure is adopted, action by township ordinance is required. No township ordinance was passed here.

Under PA 1931, No 271, § 1, as amended by PA 1949, No 33 (CLS 1961, § 41.441) and PA 1962, No 33 (Stat Ann 1965 Cum Supp § 5.271), the State legislature provided for township park commissions. The procedure for a park commission must be initiated by 50 freeholders and taxpayers. A park commissioner's compensation is $1 for each meeting and mileage of 10¢ per mile (CL 1948, § 41.443 [Stat Ann 1961 Rev § 5.273]). No such procedure was initiated here by freeholders and the salaries were, of course, considerably in excess of $1.

These statutes pertaining to police and fire protection and to township park management, together with detailed legislation providing for township zoning (CL 1948 and CLS 1961, § 125.271 *et seq.* [Stat Ann 1958 Rev and 1965 Cum Supp § 5.2963(1) *et seq.*]) evidence a clear intention by the legislature to authorize township handling of such matters in specific ways. They are the grant and limitation of a township's powers.

CL 1948, § 41.96 (Stat Ann 1961 Rev § 5.83), relied upon by the Court of Appeals, cannot sustain the payments to the commissioners since it only authorizes payment for services rendered by township officers "in the duties of their respective offices." In the case of the commissionerships, there was no legally qualified office. The payments may be recovered.

## III.

Were the offices of commissioner and township board member incompatible?

Since neither the township electors nor the board had authority to create the commissionerships, this question need not be answered. Had the authority to create the offices existed, quite clearly they would have been incompatible with any office on the township board, since there is universal agreement that, when the holder of one office can pass upon the salary of another office or otherwise supervise that office, the two are incompatible. *Weza* v. *Auditor General,* 297 Mich 686, 688; OAG 1943–1944, p 693; OAG 1947–1948, pp 658, 659; 1 OAG 1959–1960, p 113; 2 OAG 1959–1960, p 12; OAG 1961–1962, pp 77, 392. In this case, since the defendants either set their own salaries as commissioners or were instrumental in doing so, the office of commissioner would be incompatible with that of board member.

The decision of the Court of Appeals should be reversed. The case should be remanded to the circuit court for further proceedings in accordance with this opinion. Costs to appellant.

DETHMERS, and SOURIS, JJ., concurred with ADAMS, J.

O'HARA, J. I am in respectful disagreement with Mr. Justice ADAMS.

The whole record in this case bespeaks a course of conduct openly adopted, followed without deviation, over a period of years and approved in public meetings open to any electors interested in attending. This course of conduct is the antithesis of the definition of fraudulent concealment laid down in the *De Haan Case** cited by the Court of Appeals.

I would affirm the Court of Appeals by adoption of its opinion as that of this Court and tax no costs.

T. M. KAVANAGH, C. J., and KELLY, and BLACK, JJ., concurred with O'HARA, J.

SMITH, J., did not sit.

---

* *De Haan* v. *Winter*, 258 Mich 293.