RISK v LINCOLN CHARTER TOWNSHIP BOARD OF TRUSTEES

Docket No. 275129. Submitted May 7, 2008, at Grand Rapids. Decided June 26, 2008, at 9:00 a.m.

Kimberly Risk and William Tucker, upon leave granted by the Berrien County Trial Court, filed a quo warranto action against the Lincoln Charter Township Board of Trustees to challenge the dissolution of the township's park commission following a petition and referendum by the electorate. The court, Paul L. Maloney, J., denied relief, ruling that the township's voters were empowered to petition for a dissolution referendum under Const 1963, art 1, § 1, which provides that all political power is inherent in the people and that government is instituted for their equal benefit, security, and protection. The plaintiffs appealed.

The Court of Appeals *held*:

1. MCL 41.426 of the township parks act provides for the establishment of a township park commission upon petition and referendum by a township's electorate. The statute, however, does not provide for the dissolution of a voter-established township park commission. There is no provision in the Michigan Election Law (MCL 168.1 *et seq.*), the township ordinances act (MCL 4.181 *et seq.*), the Charter Township Act (MCL 42.1 *et seq.*), or any other Michigan statute for the dissolution of a voter-established township park commission. Given that the Legislature has in other statutes explicitly provided for both the establishment and dissolution of various municipal commissions, boards, and programs by municipal electors, its failure to provide for the dissolution of a voter-established township park commission must be viewed as intentional. There is simply no statutory mechanism for dissolving a voter-established township park commission. Accordingly, the defendants in this case lacked authority to place before the township's electorate the question of dissolving the township park commission.

2. The improper vote to dissolve the township park commission effectively recalled the individual township park commissioners. However, that effective recall did not conform to statutory provisions governing the recall of public officials, MCL 168.951 *et seq.*

3. On remand, the trial court shall invalidate the purported dissolution of the township park commission and order the reinstatement of the commission and its commissioners as if there had been no dissolution referendum.

Reversed and remanded.

MUNICIPAL CORPORATIONS — TOWNSHIP PARK COMMISSIONS — DISSOLUTION.

The statute that governs the establishment of a township park commission through voter petition and referendum does not provide a procedure for the dissolution of such commission, and no other provision of Michigan law addresses dissolution of a voter-established township park commission (MCL 41.426).

*Troff Petzke & Ammeson* (by *Charles Ammeson*) for the plaintiffs.

*Scholten Fant* (by *Rodney L. Schermer* and *James R. Nelson*) and *DeFrancesco & Dienes* (by *Scott A. Dienes*) for the defendants.

Amicus Curiae:

*Bauckham, Sparks, Rolfe, Lohrstorfer & Thall, P.C.* (by *John H. Bauckham*), for the Michigan Townships Association.

Before: JANSEN, P.J., and ZAHRA and GLEICHER, JJ.

JANSEN, P.J. In this quo warranto action,[1] plaintiffs

---

[1] In actuality, this is both a traditional quo warranto action and an action in the nature of quo warranto brought pursuant to MCL 600.4545. It is a traditional quo warranto action to the extent that it was brought to try title to the offices of Lincoln Charter Township park commissioner and to challenge the individual defendants' intrusion into and usurpation of those offices. MCL 600.4505; *Layle v Adjutant General*, 384 Mich 638, 641; 186 NW2d 559 (1971). It is an action in the nature of quo warranto to the extent that it was brought to challenge the validity of the disputed township election itself. MCL 600.4545(1); *Shoemaker v Southgate*, 24 Mich App 676, 678; 180 NW2d 815 (1970). This distinction, however, does not affect our resolution of the issues because actions in the nature of quo warranto brought to challenge the validity of disputed elections are functionally

appeal by right the circuit court's order validating a local election at which the qualified electors of Lincoln Charter Township voted to dissolve the township park commission. We reverse and remand to the circuit court for entry of an order consistent with this opinion.

I

In 1972, the qualified electors of Lincoln Charter Township established a township park commission in accordance with state law. Although the exact reasons are not clear from the record, the electors of Lincoln Charter Township eventually became disillusioned with the park commission that they had created. In 2006, the electors filed a petition, signed by eight percent of the township's registered voters, seeking to dissolve the park commission and to transfer control of the township's parks to the township board of trustees. Upon receipt of the petition, the township board voted to submit the question whether to dissolve the park commission to the electorate at the November 2006 general election. Specifically, the township board resolved to place the following question on the November 7, 2006, general election ballot:

> Shall the Lincoln Charter Township's elected Parks Commission be dissolved, effective November 15, 2006, to enable the Township Board of Trustees to operate all parks within the Township, pursuant to and in compliance with [the township parks act]?

Believing that the proposed ballot question was invalid, plaintiffs wrote to the Attorney General in September 2006, asking him to intervene and to bring a quo warranto action against defendant township board. However, the Attorney General declined to intervene in this matter.

equivalent to traditional quo warranto actions and are consequently reviewable in the same manner. See MCL 600.4545(3).

In October 2006, plaintiffs applied for leave to file a quo warranto action in the Berrien County Trial Court. In their application, plaintiffs alleged that defendants were "wrongfully usurping, intruding into and claiming the right to exercise the responsibilities of and the offices of Lincoln Charter Township Park Commissioner." In the proposed complaint attached to their application, plaintiffs asserted that the Lincoln Charter Township Park Commission could not be lawfully dissolved by way of popular election. In support of this proposition, plaintiffs cited OAG 1999-2000, No. 7039 (December 9, 1999), in which the Attorney General opined that a voter-established township park commission could not be dissolved by a township board resolution or by a vote of the township electorate. Plaintiffs also cited OAG 1983-1984, No. 6143 (March 24, 1983), in which the Attorney General explained the limited authority of a local unit of government to submit ballot questions to the electorate. Plaintiffs asserted that the proposed ballot question was nothing more that an improper recall effort, which violated Michigan law.

On November 7, 2006, with 3,444 in favor of dissolution and 2,408 against dissolution, the qualified electors of Lincoln Charter Township voted to dissolve the township park commission.

Defendants answered plaintiffs' application for leave to file a quo warranto action on November 9, 2006. Defendants argued that plaintiffs' application should be denied because plaintiffs had failed to provide adequate proof that the Attorney General had refused to institute quo warranto proceedings.[2] Defendants also argued

---

[2] A private citizen must generally show that the Attorney General has refused to institute quo warranto proceedings before that citizen may individually pursue a traditional quo warranto action. *Ballenger v Cahalan*, 145 Mich App 811, 818; 378 NW2d 607 (1985). "The attorney

that plaintiffs' application lacked merit. Defendants acknowledged that they had submitted the ballot question to the electors, but argued that they had been required to do so upon receipt of the electors' petition. Defendants also argued that plaintiffs could not bring a quo warranto action against the township board because the park commissioners' offices would cease to exist as of November 15, 2006, and there would accordingly be no dispute after that date between two or more individuals over entitlement to hold a public office. Lastly, defendants argued that MCL 41.426, which allows township electors to vote to establish a township park commission, also allows by implication for the electors to vote to dissolve a township park commission.

The trial court heard arguments concerning plaintiffs' application for leave to file a quo warranto action. Plaintiffs first presented proof that they had timely requested intervention by the Attorney General in this matter. With respect to their application itself, plaintiffs again argued that a township park commission may not be lawfully dissolved by way of a popular election. Plaintiffs asserted that because a township park commission exists only by statute, a park commission can only be lawfully dissolved by legislative action or consent. Defendants responded by arguing that a township

general shall bring an action for quo warranto when the facts clearly warrant the bringing of that action. If the attorney general receives information from a private party and refuses to act, that private party may bring the action upon leave of court." MCL 600.4501; see also MCR 3.306(B)(3)(b). To bring an action in the nature of quo warranto under MCL 600.4545 on the basis of alleged election error or fraud, a private citizen need not first seek intervention by the Attorney General, *Penn School Dist No 7 v Lewis Cass Intermediate School Dist Bd of Ed*, 14 Mich App 109, 118; 165 NW2d 464 (1968), but must nonetheless obtain "special leave of the court or a judge thereof," MCL 600.4545(2).

electorate may dissolve a park commission by an act of "equal dignity" to the act that originally created the park commission.

The trial court granted plaintiffs' application for leave to file a quo warranto action. Thereafter, the parties filed supplemental briefs and made additional arguments. On November 14, 2006, the trial court ruled from the bench, commenting in pertinent part:

> In *Cain* [*v Brown*, 111 Mich 657; 70 NW 337 (1897)], the state legislature created the Village of Attica through Act 311 of 1885. . . . The Court held that the resolution voted on by the registered voters [of] the Village of Attica to dissolve its incorporation was not effective, because the legislature, a higher authority, create[d] the village and did not delegate any of [its] authority to dissolve the village. Also not explicitly stated, the Michigan Supreme Court in *Cain* functionally concluded that the local resolution was not of equal dignity with the act of the state legislature.
>
> In this case the voters of Lincoln Township in 1972 approved the creation of the Parks Commission. That [question] appeared on the ballot pursuant to statute MCL 41.426. In like manner, in 2006 a [question] was approved by the voters dissolving the Parks Commission, and the [question] was submitted by the Township Board based on their legal position in this case pursuant to the same statute.
>
> Now, the Attorney General's opinions in the Court's judgment do not require a different outcome. . . . All the [Attorney General's] opinions in the Court's judgment are either distinguishable or in the case of . . . Opinion 7[0]39, incorrect. [OAG] 7309 dealt with the dissolution of a township parks commission. In the Court's judgment that opinion misinterprets the *Cain* case. It does—and also does not in the Court's judgment address the equal dignity doctrine. *Cain* is not, therefore, in the Court's judgment . . . on point. *Cain* and all the other [Attorney General's] opinions cited address municipal corporations, and it's clear to this Court that the Parks Commission is not a

municipal corporation. . . . So therefore in the Court's judgment [OAG] 7[0]39 . . . is simply incorrect. [OAG] 6342 dealt with a drainage district[,] which again was a body corporate. [OAG] 7003 also dealt with a body corporate. And likewise the hospital authority is a body—which is the subject matter of [OAG] 6411, is a body corporate pursuant to MCL 331.2. In the Court's judgment based on my review of the case law and the statute, there is similar authority for a Parks Commission to be a body politic.

Now, as I've said before the Township Parks Act, which is MCL 41.421 *et seq*[.], contains a provision for a petition and subsequent ballot question to establish a parks commission. That's at MCL 41.426. As I've indicated before, the act does not contain any specific provision for the dissolution of an established [p]arks commission. However, in the Court's judgment that does not end the inquiry. Article [1], Section 1 of the Michigan Constitution says: "All politic[al] power is inherent in the people. Government is instituted for their equal benefit, security, and protection."

\* \* \*

There is no delegation by either the Michigan Constitution or by a statute to dissolve a parks commission, nor is it prohibited by law in light of the fact that there simply is no provision in Michigan law for dissolution of a parks commission, but neither is it prohibited. Article [7], Section 34 provides that the provisions of the Constitution of Michigan and laws concerning townships shall be liberally construed in their favor, and power granted to counties and townships—in this case townships, obviously—shall be fairly implied and not prohibited by the constitution.

Again, the dissolution of the Parks Commission is not prohibited by law. Neither the constitution [n]or a statute delegates the power to dissolve the Parks Commission. Hence, in the Court's judgment the political power to dissolve the Parks Commission remains in the people' of Lincoln Township. And in like manner and . . . supplementary thereto in the Court's judgment the Township's pow-

ers are to be liberally construed and fairly implied again as not prohibited by the constitution.

Accordingly, this Court rules that given the power residing in the voters of Lincoln Township, exercising their political power under Article [1], Section 1 had the authority to petition their board for a referendum to dissolve the Parks Commission that they had established with equal dignity in . . . 1972. Accordingly, the relief granted—the relief requested by the quo warranto petition in this case is denied, and the Court will deny as moot all other claims for relief under the quo warranto [petition].

II

Whether township electors are empowered to dissolve an established township park commission is a question of law. Questions of law, including questions of statutory interpretation, are reviewed de novo on appeal. *Adams Outdoor Advertising, Inc v City of Holland*, 463 Mich 675, 681; 625 NW2d 377 (2001).

III

Plaintiffs argue that once a township park commission is established in accordance with Michigan law, it may not be dissolved. Plaintiffs argue that the trial court therefore erred by validating the process by which the electors of Lincoln Charter Township voted to dissolve the township park commission. We agree.

Michigan's township parks act, MCL 41.421 *et seq.*, governs the establishment of a township park commission. MCL 41.426 provides in relevant part:

(1) On receipt of a written petition signed by not less than 8% of the registered voters of a township, the township board of that township, at its first meeting after the receipt of the petition, shall submit the question of establishing a township park commission to the registered voters of the township at the next regular election to be

held in the township. If a majority of the registered voters voting on the question vote in favor of establishing a township park commission, the township board shall appoint the following number of members to a township park commission:

(a) Before the effective date of the amendatory act that added subsection (3), 6 members.

(b) On and after the effective date of the amendatory act that added subsection (3), an odd number of members not fewer than 5 or more than 9 as determined by the township board.

(2) The members appointed pursuant to subsection (1) shall serve until the next township election at which township officers are elected. At the next township election at which township officers are elected . . . , the number of members of the township park commission as determined under subsection (1) shall be elected for terms of 4 years each.

Under the Michigan Election Law, MCL 168.1 *et seq.*, township park commissioners are "[e]lective township officers," MCL 168.341, whose names are submitted to the voters on the township's general election ballot, MCL 168.358(1)(g).

The township parks act does not provide for the dissolution of a voter-established township park commission. Nor is any provision for dissolving a township park commission contained within the Michigan Election Law, the township ordinances act, MCL 41.181 *et seq.*, the Charter Township Act, MCL 42.1 *et seq.*, or any other provision of Michigan law.

Faced with the very question at issue in this appeal, the Attorney General has opined that a voter-established township park commission may not be dissolved:

Although the township parks act addresses how a township park commission is established, it is silent as to

whether or by what means a township park commission may be dissolved. The charter township act likewise provides no authority for dissolving a township park commission, either by resolution of the charter township board or by vote of the township electors. The absence of any township discretion to terminate township park commissions is further confirmed by provisions in the Michigan election code, MCL 168.1 *et seq.* . . . . Section 341 of the election code provides that elective township officers may include park commission members. Moreover, section 358(1)(g) of the election code provides that there *shall* be elected several specified township officers, including park commission members in those townships having park commissions.

The Legislature has not provided the authorization for, or the means of terminating the existence of a voter-established township park commission. Although not directly on point, the Michigan Supreme Court in *Cain v Brown*, 111 Mich 657, 661; 70 NW 337 (1897), quoted with approval the rule regarding dissolution of municipal corporations: "As they can exist only by legislative sanction, so they cannot be dissolved or cease to exist except by legislative consent or pursuant to legislative provision." This rule, being applicable to other types of public entities, has been applied to consolidated drain districts; to county hospitals; and to local transportation authorities.

It is my opinion, therefore, in answer to your second question, that a voter-established township park commission may not be dissolved by resolution of the charter township board or by vote of the township electors following the township's incorporation as a charter township.

In the event the Legislature deems it appropriate to authorize the dissolution of township park commissions, it may adopt legislation granting such authority and specifying the procedures for its implementation. [OAG 1999-2000, No. 7039, p 80 (December 9, 1999) (emphasis in original).]

"Although Attorney General opinions are not binding on this Court, they can be persuasive authority." *Lyso-*

*gorski v Bridgeport Charter Twp*, 256 Mich App 297, 301; 662 NW2d 108 (2003); see also *Williams v Rochester Hills*, 243 Mich App 539, 557; 625 NW2d 64 (2000). For the reasons set forth below, we find the logic of OAG 1999, No. 7039 to be persuasive.

The primary purpose of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *Amburgey v Sauder*, 238 Mich App 228, 231; 605 NW2d 84 (1999). The Legislature is presumed to have intended the meaning it plainly expressed. *Id.* at 232. We cannot read into a statute language that was not placed there by the Legislature. *AFSCME v Detroit*, 468 Mich 388, 412; 662 NW2d 695 (2003). " 'Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there.' " *Grimes v Dep't of Transportation*, 475 Mich 72, 85 n 43; 715 NW2d 275 (2006), quoting *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993).

We fully acknowledge that provisions of law concerning counties, townships, cities, and villages "shall be liberally construed in their favor." Const 1963, art 7, § 34; *Hess v West Bloomfield Twp*, 439 Mich 550, 560-561; 486 NW2d 628 (1992). However, "the powers granted to townships by the Constitution and by law must include only those fairly implied and not prohibited by the Constitution." *Howell Twp v Rooto Corp*, 258 Mich App 470, 475-476; 670 NW2d 713 (2003). Townships have no inherent powers; rather, they possess only those limited powers conferred on them by the Legislature or the Michigan Constitution. *Hess v Cannon Twp*, 265 Mich App 582, 590; 696 NW2d 742 (2005). Thus, for the dissolution of the Lincoln Charter Township Park Commission to be valid, there must be a

statute or constitutional provision that expressly or impliedly authorizes such an action. See *Hanselman v Wayne Co Concealed Weapon Licensing Bd*, 419 Mich 168, 187; 351 NW2d 544 (1984).

As noted previously, the township parks act permits the qualified electors of a township to establish a township park commission by popular vote, MCL 41.426, but does not provide a means for dissolving a voter-established township park commission. Nor does any other provision of law allow for the dissolution of a voter-established township park commission.

In contrast, certain other statutes explicitly provide for *both the establishment and dissolution* of various commissions, boards, and programs by the qualified electors of a local unit of government. For example, the community center act, MCL 123.41 *et seq.*, states that upon receipt of a petition signed by at least 10 percent of the qualified electors, the legislative body of a township or village[3] "shall submit . . . to the people" the question whether the township or village should establish a community center and a board of directors to oversee it. MCL 123.41; MCL 123.44. The act provides that "if adopted by a majority vote of the qualified voters participating in said election, then this act shall be in full force and effect." MCL 123.41. The act goes on to provide, however, that a township or village that has established a community center and accompanying board of directors may dissolve that community center and board of directors by way of a subsequent popular vote:

> Any . . . village or township having previously adopted the provisions of this act, may at any time thereafter relinquish said authority or power by following the same procedure as provided in this act for adopting the provisions

---

[3] The community center act applies only to townships and villages with no more than 10,000 inhabitants. MCL 123.41.

thereof: Provided, That such action may be taken by the legislative body aforesaid only after a petition signed by 10 per centum of the qualified voters residing in such village or township, as the case may be, duly filed with the legislative body thereof at least 90 days prior to the date of re-submission asking that the question of relinquishment of said authority be re-submitted to the vote of the people. [MCL 123.46.]

Similarly, the band act, MCL 123.861 *et seq.*, states that upon receipt of a petition signed by at least 10 percent of the qualified electors, the legislative body of a township, village, or city[4] "shall submit . . . to the people" the question whether the township, village, or city should establish a governmentally funded musical band for the benefit of the public. MCL 123.861; MCL 123.862. The act provides that "if adopted or agreed to by a majority vote of the qualified voters participating in said election, then this act shall be in full force and effect." MCL 123.861. The act goes on to provide, however, that a township, village, or city that has established a publicly funded musical band may dissolve that band by way of a subsequent popular vote:

Any . . . village, township or city, having previously adopted the provisions of this act, may at any time there-after relinquish said authority or power by following the same procedure as provided in this act for adopting the provisions thereof: Provided, That such action may be taken by the legislative body aforesaid only after a petition signed by 10 per centum of the qualified voters residing in such village, township or city, as the case may be, duly filed with the legislative body thereof at least 60 days prior to the date of re-submission, asking that the question of relinquishment of said authority be re-submitted to the vote of the people. [MCL 123.863.]

---

[4] The band act applies to townships and villages, and also applies to cities with no more than 50,000 inhabitants. MCL 123.861.

The firefighters and police officers civil service system act, MCL 38.501 *et seq.*, states that upon receipt of a properly signed petition, the governing body of a "city, village, or municipality"[5] shall submit to the qualified electors the question whether that city, village, or municipality should establish a firefighters and police officers civil service commission. MCL 38.517a(2). The act provides that "[i]f the majority of the qualified electors of the city, village, or municipality vote in favor of the adoption of this act, then this act shall be in full force and effect in that city, village, or municipality." MCL 38.517a(4). The act goes on to provide, however, that a city, village, or municipality that has established a firefighters and police officers civil service commission may dissolve that commission by way of a subsequent popular vote:

> This act shall continue in full force and effect in any city, village, or municipality in which it has been properly adopted until rescinded by a majority of the electors voting thereon at an election at which the question of rescission of this act for that city, village, or municipality is properly submitted. [MCL 38.518(1).]

The act specifies that "[i]f the majority of the qualified electors of the city, village, or municipality vote in favor of the rescission of this act, then this act is rescinded in that city, village, or municipality." MCL 38.518(3).

Lastly, the sheriff's department civil service commission act, MCL 51.351 *et seq.*, states that upon receipt of a properly signed petition, a county board of commissioners shall submit to the qualified electors the question whether that county[6] should establish a civil ser-

---

[5] The firefighters and police officers civil service system act applies only to municipalities that pay some or all members of their fire departments or police departments. MCL 38.501.

[6] The sheriff's department civil service commission act applies only to counties with 400,000 or more inhabitants. MCL 51.351.

vice commission for sheriff's department employees. MCL 51.366. The act provides that "[i]f the majority of the qualified electors vote in favor of the adoption of this act, then the provisions of this act shall be in full force and effect in the county." MCL 51.366(4). The act goes on to provide, however, that a county that has established a civil service commission for sheriff's department employees may dissolve that commission by way of a subsequent popular vote:

> This act shall continue in full force and effect in any county in which it has been properly adopted until rescinded and repealed by a majority of the electors voting thereon at an election at which the question of rescission and repeal of this act for that county is properly submitted. [MCL 51.367.]

The act specifies that "[i]f a majority of the qualified electors vote in favor of the rescission and repeal of this act, then the provisions thereof shall be rescinded and repealed in the county, and not otherwise." MCL 51.367.

The Legislature is presumed to be aware of all existing statutes when enacting new laws. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). As the abovementioned examples make clear,[7]

---

[7] As originally enacted, the township parks act required a township board to automatically create a township park commission upon receipt of the necessary petitions. See 1905 PA 157. However, this mechanism for creating a township park commission was altered in 1962. At that time, the Legislature amended the act to require a township board, upon receipt of the necessary petitions, to submit to the qualified electors of the township the question of establishing a township park commission. See 1962 PA 33. Of the abovementioned statutes, three specifically predate this 1962 amendment. For instance, the abovementioned provisions of the community center act were all originally enacted in 1929. See 1929 PA 199. The abovementioned provisions of the band act were all originally enacted in 1923. See 1923 PA 230. The abovementioned section of the firefighters and police officers civil service system act allowing for

the Legislature unquestionably knows how to provide for *both the establishment and dissolution* of various commissions, boards, and programs by the voters of local units of government. In light of these statutes—all of which provide for both establishment and dissolution by popular vote—we must view as intentional the Legislature's failure to provide for the dissolution of township park commissions. *Grimes, supra* at 85 n 43; *Farrington, supra* at 210. There is simply no statutory mechanism for dissolving a voter-established township park commission, and we may not read into the township parks act a provision that was not included by the Legislature.[8] *AFSCME, supra* at 412.

As at least some members of our Supreme Court have observed, the township parks act contains both "the grant and limitation of a township's powers." *Burton Twp v Speck*, 378 Mich 213, 229; 144 NW2d 347 (1966) (Adams, J., dissenting). Neither the township board nor the township electorate has been given the express or implied power to dissolve a voter-established township park commission. We therefore conclude that defendants acted beyond their authority when they placed before the township electors the question of dissolving

---

voter establishment of a civil service commission was originally enacted in 1935, see 1935 PA 78, and the section providing for voter dissolution of an established civil service commission was enacted in 1951, see 1951 PA 88. Accordingly, it is apparent that when amending the township parks act in 1962, the Legislature knew how to enact laws providing for *both the establishment and dissolution* of various commissions, boards, and programs by the voters of local units of government.

[8] Nor can we conclude that the power to dissolve a township park commission by way of an act of "equal dignity" is fairly implied by the statutory power to establish a township park commission in the first instance. See Const 1963, art 7, § 34. Quite simply, in light of the abovementioned statutes that provide for both the establishment and dissolution of various commissions, boards, and programs, we must conclude that the Legislature has purposefully decided not to enact a mechanism for dissolving voter-established township park commissions.

the Lincoln Charter Township Park Commission. As observed by the Attorney General, it is for the Legislature "to authorize the dissolution of township park commissions"—it is not for the courts.

IV

Nor can we conclude that the improper vote to dissolve the Lincoln Charter Township Park Commission had the effect of recalling the individual township park commissioners. Elected officials may only be removed from office as provided by law. See Const 1963, art 7, § 33. "Recalls of elected officials in Michigan are governed by MCL 168.951 *et seq.*" *Dimas v Macomb Co Election Comm*, 248 Mich App 624, 627; 639 NW2d 850 (2001). This includes township officials. MCL 168.372. Among other things, a petition for the recall of a public officer shall "[s]tate clearly each reason for the recall. Each reason for the recall shall be based upon the officer's conduct during his or her current term of office." MCL 168.952(1)(c). Further, "[a] separate petition shall be circulated for each officer sought to be recalled." MCL 168.958a. A copy of the petition seeking to dissolve the Lincoln Charter Township Park Commission is contained in the lower court file. The petition does not mention the recall of any specific park commissioner or state the reasons why any particular park commissioner should be removed. See MCL 168.952(1)(c). Nor were individual petitions circulated for each member of the park commission. See MCL 168.958a. The attempt to dissolve the park commission did not conform to the provisions of Michigan law governing the recall of public officials. Thus, the vote to dissolve the park commission did not have the effect of recalling the individual township park commissioners.

V

We reverse the judgment of the trial court and remand for entry of an order consistent with this opinion. The trial court shall invalidate the purported dissolution of the Lincoln Charter Township Park Commission and shall order reinstatement of the park commission as it would have existed in the absence of the improper vote to dissolve it. The membership of the reinstated park commission shall include all township park commissioners who would have held office, notwithstanding the improper vote to dissolve the commission, as of 12:00 noon on November 20, 2006. See MCL 168.362(1).[9]

In light of our resolution of the issues, we decline to address the remaining arguments raised by the parties on appeal.

Reversed and remanded to the trial court for entry of an order consistent with this opinion. We do not retain jurisdiction. No costs, a public question having been involved.

_____

[9] The membership of the reinstated park commission shall include all persons who were elected to the office of Lincoln Charter Township park commissioner at the 2006 general election. These persons properly assumed their offices as of 12:00 noon on November 20, 2006, and shall hold office for terms of four years, until their successors are elected at the 2010 general election and qualified. MCL 41.426(2); MCL 168.362(1). The membership of the reinstated park commission shall also include all other park commissioners who would have held office, notwithstanding the improper vote to dissolve the commission, as of 12:00 noon on November 20, 2006. Because the filing deadline for the 2008 primary election has now passed, MCL 168.551, there can be no election of Lincoln Charter Township park commissioners at the 2008 general election. Therefore, all park commissioners—other than those elected at the 2006 general election—shall vacate their offices on January 1, 2009, MCL 168.362(1), and the Lincoln Charter Township board shall fill any resulting vacancies on the township park commission at that time, MCL 41.426(5); MCL 168.370. Any persons appointed to fill such vacancies shall hold office only until the 2010 general election, at which time their successors shall be elected and shall take office upon qualifying. MCL 168.370a.