THE PEOPLE OF THE STATE OF ILLINOIS, for use, etc., Plaintiff in Error, *vs.* ANTHONY BORDEAUX *et al.* Defendants in Error.

*Opinion filed October 26, 1909—Rehearing denied Dec. 8, 1909.*

1. APPEALS AND ERRORS—*when objection by one defendant can not be availed of by others.* Where a decree in a chancery proceeding is several as to the various defendants, an objection of adequate remedy at law made by one defendant in his answer is not available, on appeal, as to other defendants who answered and submitted themselves to the jurisdiction of the court without making such objection.

2. SAME—*when decree should not be reversed as to all defendants.* Where a decree is several as to the various defendants, the fact that an objection of adequate remedy at law, made by one defendant, and the insufficiency of the evidence to sustain the decree as to another defendant may require a reversal as to them, does not justify reversing the decree as to the other defendants.

3. SAME—*when judgment of the Appellate Court is reviewable.* Where a judgment of reversal by the Appellate Court is such that the circuit court can do nothing upon re-instatement of the cause but dismiss the bill, such judgment is reviewable by the Supreme Court on writ of error.

4. SAME—*when a party cannot object that evidence was heard before chancellor.* Where a cause is referred merely for taking evidence, if the parties voluntarily appear and offer their evidence before the chancellor without calling attention to the previous order they cannot object, on appeal, that their evidence was so heard.

5. COMMONS OF CAHOKIA—*supervisor of Cahokia is trustee for the people.* The supervisor elected by the inhabitants of the village of Cahokia is, as to the moneys, bonds and securities obtained by him in his management of the Cahokia commons, a trustee for the people of the village, and the facts that he is an officer and is called a supervisor, and that he is required to give a bond, do not alter the trust relation.

6. TRUSTS—*provision that the trustee shall give bond does not change relation.* The fact that a trustee is required to give a bond or security for the performance of his duties as trustee does not change the status of the parties nor destroy the legal relation.

7. EQUITY—*right to compel accounting from trustee is a proper subject of equity jurisdiction.* Where a trust and fiduciary relation exists the beneficiaries of the trust have a right to demand an accounting from the trustee, and the enforcement of that right is a proper subject of equity jurisdiction.

8. SAME—*when existence of a remedy at law does not deprive equity of jurisdiction.* Where a trust is involved, a court of equity is not necessarily deprived of jurisdiction because of the existence of a remedy at law.

9. SAME—*essentials of defense of remedy at law.* It is necessary to the defense of remedy at law that the remedy shall be as clear, efficient, complete and effectual as the remedy in equity.

10. BONDS—*when the trustee and various bondsmen may be brought in in one suit.* Where a defaulting and insolvent trustee refuses to render any account of the proceeds of the trust funds and there are no reports or accounts from the beginning of his term from which to ascertain the time or amount of his defalcations, it is proper to bring the trustee and the sureties on his various bonds into court in one proceeding for discovery and accounting and to fix upon the sureties their liability for the defalcations occurring during the terms they were sureties.

11. SAME—*what makes a prima facie case of misappropriation from beginning of term.* Proof that at the time of his election to the trust position of supervisor of Cahokia village such supervisor was a farmer but that soon thereafter he engaged in the saloon business and squandered his own estate and never accounted for the trust moneys received by him during his five terms of office of two years each, makes a *prima facie* case of misappropriation of funds by him from the time he first assumed his trust duties.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. B. R. BURROUGHS, Judge, presiding.

WINKELMAN & OGLE, (FRED B. MERRILLS, of counsel,) for plaintiff in error.

B. H. CANBY, C. E. POPE, D. E. KEEFE, AUGUST BARTHEL, and R. W. ROPIEQUET, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is a writ of error to the Appellate Court for the Fourth District to review a judgment reversing a decree of the circuit court of St. Clair county granting the relief prayed for in the bill filed by plaintiff in error, the People of the State of Illinois, suing for the use of the inhabitants of the village of Cahokia, against the defendants in error, Anthony Bordeaux, supervisor of the commons of Cahokia, and the sureties on his bond as such supervisor, for an accounting of the proceeds of common lands, the property of said inhabitants, received by said supervisor, by which decree the court found the sums misappropriated by said supervisor, adjudicated the rights of the parties and decreed the several amounts to be paid by said sureties. On the reversal of the decree the Appellate Court remanded the cause to the circuit court, and the writ of error in this case was sued out to review the judgment of the Appellate Court.

By an act of March 3, 1791, the Congress of the United States appropriated the lands previously used by the inhabitants of the village of Cahokia as a common to be used by them as such common until otherwise disposed of by law, and by an act of May 1, 1810, the Congress confirmed the claim of said inhabitants to said lands as a common. The legislature of this State, by an act of March 5, 1819, author-

ized the inhabitants of Cahokia to choose three fit persons as "trustees of the common," who should do all business necessary to the right management of the common. By an act of January 4, 1827, the election of a supervisor was authorized for the purpose of raising a levee or embankment and repairing the streets of the village, and by act of February 17, 1841, he was authorized to cause any part of the commons to be surveyed in lots and lease the same for any number of years not exceeding one hundred. The proceeds of the commons so leased were to be appropriated to the education of the children of the inhabitants and for no other purpose whatever, and the supervisor or lessees were to pay over to the trustees the annual rents. By an act of February 14, 1855, the supervisor and trustees were authorized to cause a survey and plat of the commons to be made, and the prohibition against appropriating any part of the rent to other than school purposes was repealed. By an act of March 24, 1874, the supervisor was authorized to sell and convey the absolute title to leasehold property when authorized to do so by a three-fourths vote at an election to be held in the village. The act provided that the moneys arising from such sales should be applied, after paying necessary expenses, to the same purposes that the rents and profits derived from leasing the commons had been applied, but only the interest should be so applied. The principal was to be invested in bonds of the United States or State of Illinois, or other equally good securities, or loaned on notes secured by mortgage on real estate. The officer authorized to make the sale was to give bond to the People of the State of Illinois, for the use of the inhabitants of the village, for the faithful discharge of his duties and accounting and proper application of all money that might come to his hands. An election was held in the village on November 18, 1876, authorizing the supervisor to sell the commons. At the March election, 1890, Anthony Bordeaux was elected supervisor of the village and commons and was re-

elected every two years, and held the office until March 16, 1900, when he was succeeded by Camille Droit. On each election he gave a bond, and some of the sureties on the respective bonds were different persons. When he went out of office the moneys received had not been reported to any board or village authority or accounted for, and Bordeaux was insolvent. The amended bill set out the various elections, the giving of the bonds, the receipt of moneys for the sale of commons belonging to the inhabitants of the village, the failure to account for the same and refusal to pay over money or deliver securities, the failure and refusal of Bordeaux to make any statement, written or verbal, concerning the whereabouts of the money and what disposition he had made of the same, his insolvency and residence in Missouri. The bill alleged that the sums of money received were squandered by Bordeaux and applied to his own use, but that the time or times or manner of misappropriation were unknown to complainant; that he kept no books or records; that complainant could not ascertain from any source how much of the money received had been misused or squandered or at what time or times during the terms, so that complainant was unable to charge a certain sum of money to each of the respective bonds, wherefore complainant had no adequate legal remedy. The bill prayed for an accounting and discovery, an answer under oath by two of the defendants, and that upon a hearing the moneys appropriated should be charged to the proper bonds. Some defendants answered, and the chancellor, upon hearing the evidence of the respective parties, entered a decree granting the relief prayed for in the bill, stating the account, finding that certain sums were received by Bordeaux during the respective terms of office, and finding specifically that he had squandered the several sums of money received by him during the respective terms for which bonds were given, reciting as to each the amount received and squandered and decreeing the payment of the same by the respective sureties on

the bonds. Those defendants who had answered prayed an appeal to the Appellate Court, which was granted to each separately and to any two or more of them. The appeal was perfected by Frank B. Bowman, Mary Soucy and the executors of Edward Abend, deceased, who are defendants in error.

The reversal of the decree by the Appellate Court was on this ground recited in its judgment: "In the rendition of the decree aforesaid there is manifest error in this: The trial court erred in combining several distinct and independent actions and embodying them in one decree, as set forth in the opinion filed herein." Upon looking into the opinion we find this statement: "There are at least two contentions made by appellants under which the decree in this case must be reversed and remanded." The first reason set forth following that statement is, that the complainant had a plain, adequate and complete remedy at law, which was alleged by Frank B. Bowman, one of the defendants, in his answer, and that the objection made by him availed as to all the defendants. In expressing the views of the court on that subject it is said that there were several distinct causes of action which could not be combined in one proceeding, but it does not appear that anyone had complained of a misjoinder of actions or that any harm was done thereby, if there had been, in fact, a misjoinder. As no one had raised the objection there had been no decision of the chancellor on that subject to be reviewed, and according to the opinion the decree was reversed because the complainant had an adequate remedy at law and was not authorized to maintain a bill in equity. If that view of the law was correct it brought the case to an end, but the opinion contained a second ground for reversal, which was, that the evidence was not sufficient to justify the finding of the decree that there was a default or misappropriation of money by Bordeaux between March, 1890, and March, 1892, and therefore the decree as to Mary Soucy, one of the sureties

during that period, was wrong. It is the judgment of the Appellate Court that is under review, and it does not harmonize with the opinion giving the reasons for it. The judgment could not be sustained on the ground recited in it. If, on account of the reference to the opinion, we should construe the judgment as being based on the reasons given in the opinion, we are of opinion that the judgment was wrong. The defendants who answered, submitting themselves to the jurisdiction of a court of equity and making no claim that there was an adequate remedy at law, ought not to have the benefit of Bowman's objection. A decree in equity may be several as to different defendants, and that was the case here as between the parties appealing from the decree. There was no reason why it should not stand as to the other defendants than Bowman if his objection was found to be good. Likewise the fact, if it existed, that the amount found due from Mary Soucy was not sustained by the evidence would not justify a reversal as to other defendants. However, in any view of the judgment of the Appellate Court, nothing could be done by the circuit court, upon the re-instatement of the cause, except to dismiss the bill.

The defense of an adequate remedy at law, as above stated, concerns the defendant Bowman alone, and if it existed would be no ground for reversing the decree as a whole. It is necessary to that defense that the remedy should be as clear, efficient, complete and effectual as in equity. (*Morris* v. *Thomas,* 17 Ill. 112; *Shays* v. *Norton,* 48 id. 100.) The commons in this case were the property of the inhabitants of the village of Cahokia. It was provided by statute that their wish as to the sale of their lands might be ascertained by an election, and if three-fourths should vote for a sale the supervisor might sell the lands and use the interest in certain ways, but he was prohibited from using or appropriating the principal, which he was required to invest in government bonds or other good securities. As to such moneys, bonds and securities, his relation

was that of a trustee for the owners of the property, invested with the power to dispose of their property for their benefit and to hold the proceeds in trust. The fact that he was an officer or called a supervisor of the village or commons could not alter his relation or do away with the trust that would exist in any other case. Neither was the fact that he was required to give a bond. A provision that a bond or security for the performance of the duties of a trustee shall be given does not change the status of the parties or destroy the legal relation. The trust and fiduciary relation existed, and, so far as Bordeaux was concerned, the inhabitants of the village had a right to demand an account, and the enforcement of that right was an ordinary and proper subject of equity jurisdiction. Where such a relation exists between the parties and the duty rests upon defendant to render an account, a suit in equity for accounting is proper. (*Howell* v. *Moores,* 127 Ill. 67; *Farwell* v. *Cohen,* 138 id. 216; 3 Pomeroy's Eq. Jur. sec. 1421.) The other defendants were sureties for the faithful performance of the duties of the trustee, and while the obligation of a surety is strictly construed, it was only by means of an accounting that the amount chargeable to each could be ascertained. The obligation to answer for the misappropriation of moneys rested upon the sureties on the bond for the term in which the misappropriation occurred, and under the facts of this case we regard it as proper to bring all of them into one suit with Bordeaux, where the account in which they were interested could be taken and the liability of each determined. Where a trust is involved a court of equity is not necessarily deprived of jurisdiction by the existence of a remedy at law. *Howell* v. *Moores, supra.*

It is contended that there was no evidence of any default or misappropriation by Bordeaux during his first term of office, and therefore the opinion of the Appellate Court that the decree against Mary Soucy could not be sustained was correct. There was no report or settlement of the ac-

count from the beginning so that the amount of any defalcation or misappropriation at a particular time could be ascertained thereby, but the proceeds of the lands, when called for, were not forthcoming, and the times when misappropriations occurred were necessarily proved by indirect evidence. The later sureties did not assume obligations based on any account or report by which they became liable for what was shown to be on hand, and it would be clearly inequitable that the inhabitants of the village, for whom Bordeaux was trustee, should lose their property if they were able to make a *prima facie* case as to the periods when misappropriations occurred. There was evidence that at the time of his first election Bordeaux was a farmer, but that soon after, and during his first term, he engaged in the saloon business, and from that time spent and squandered his own estate and never accounted for moneys received by him with which the several sureties were charged. A *prima facie* case of the misappropriation of the funds from the time he first assumed the duties of a trustee was made and was not met by any evidence whatever.

It is also contended on behalf of Bordeaux that the court was not warranted in finding that Bordeaux in his second term collected and received the amount of a certain mortgage. The mortgage was released by Bordeaux on April 6, 1892, and there was evidence that he received the money and re-loaned at least some of it to Andrew Palmier. Just prior to the election of 1894, when Bordeaux was a candidate for re-election, an examination was made, with his consent, by Alexander S. Vien, who secured some kind of a report from Bordeaux which showed that he was short about $2000, and he so admitted. The security was gone and he did not have the money. This evidence was not overcome by any proof on the part of Bowman and was sufficient to charge him.

Counsel for defendants in error say that by suggesting a diminution of the record in the Appellate Court some

proceeding was made to appear in which a receiver had been appointed, who ought to have been made a party to the suit.   No proceeding of that kind in the Appellate Court appears from the abstract of the record of that court, and we do not see how some other proceeding in which a receiver was appointed could have been made a part of the record in this case in the manner stated.

The chancellor on June 9, 1902, by consent of the parties referred the cause to O. A. Krebs to take testimony and report the same to the court, but afterward the parties appeared before the chancellor and offered their evidence without objection or calling attention to the previous order. The cause was merely referred for taking evidence, and a party who voluntarily appeared and offered his evidence before the chancellor could not be heard to object, on appeal, that the evidence was so heard.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*