WILLIAM O. NOLEN, Plaintiff-Appellee, *v.* JAMES O. HALL, Defendant-Appellant.

(No. 69-86; )

Fifth District—December 10, 1970.

868

Karns, Starnes, Nester & Stegmeyer, of Belleville, (John M. Karns, Jr., of counsel,) for appellant.

Boswell & Boswell, of Harrisburg, (Arlie O. Boswell, Sr., and Arlie O. Boswell, Jr., of counsel,) for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the defendant, James O. Hall, from judgment in favor of plaintiff for $24,439.44. Plaintiff's complaint was against the defendant, his then father-in-law, as well as the plaintiff's mother-in-law and his wife, Janet. Only defendant James O. Hall has brought this appeal.

██ This is an action in equity for an accounting. The parties stipulated as to the issues to be decided by the trial court and the matter was presented on the pleadings, stipulations, deposition, and exhibits. No testimony was heard in open court. Therefore we do not consider ourselves bound by the trial court's findings and have made an examination of the record and have made our decision based upon our independent examination of the facts presented and the logical inferences to be drawn therefrom. *Inter-Insurance Exchange v. Travelers Indemnity Co.*, 57 Ill.App.2d 17, 206 N.E.2d 518 (1965).

The parties came before the court because of the inter-family dealings between a father, the defendant Hall, and his son-in-law, the plaintiff Nolen. The respective wives were also defendants and they were an integral part of the many transactions between the plaintiff Nolen who shall hereinafter be called "Nolen" and defendant Hall hereinafter referred to as "Hall".

Prior to the marriage between Nolen and Hall's daughter, Janet, Nolen lived in West Frankfort and the Halls in Harrisburg. Nolen did not desire to move to Harrisburg but Hall insisted that the Nolens reside in Harrisburg. The financial transactions between the two families started prior to the Nolens' marriage. On February 2, 1960, Hall paid $500.00 earnest money for the purchase of a dwelling house for his still

prospective son-in-law and daughter. Although Nolen and Janet were not married at this time the title was placed in the Nolens as joint tenants. The marriage of the Nolens took place on February 16, 1960.

The house was purchased by a down payment of $4,500.00 which was provided by Hall and a loan of $15,000.00 from the First National Bank of Harrisburg. The Nolens were the only parties liable under the mortgage to the bank.

The Halls and Nolens, subsequent to the purchase, decided the property should be used by the Nolens to operate a restaurant. This required remodeling and Hall, a successful businessman, made most of the remodeling decisions. Nolen, still in his twenties, had never earned over $5,000.00 per year although he had held numerous jobs. To finance the remodeling, a new loan was arranged by Hall in the amount of $27,500.00. Part of the proceeds were applied to the old loan and part of the new loan was also used to get the restaurant in operation. The Nolens executed the mortgage. The Nolens and the Halls obligated themselves under the note.

Hall, in addition to making the financial arrangements and assisting in the remodeling, also selected the insurance, the banking institution, accountant, and hired employees. The Halls could write checks on the Restaurant account. The Lantern House, as the Restaurant was named, opened for business on June 14, 1960. It was operated as a partnership by Nolen and his wife. Tax returns for the years 1960-1964 indicate the Nolens as partners with no mention of the Halls. The Halls, however, did continue to assist the Nolens with both physical and financial contributions. The Nolens with the help of the Halls operated until March 4, 1964, at which time the premises and many of the records were destroyed by a fire. The Nolens resided at the restaurant and made all payments on the mortgage and paid insurance premiums from the partnership while the business operated. After the fire, the Nolens moved in with the Halls and Hall provided employment for Nolen until differences arose which culminated in this suit. The history of the relationship between the Nolens and the Halls is one of financial dominance by Hall. Hall directly participated in and exercised influence over every financial decision or transaction that the Nolens made. Hall had control of the pursestrings.

The fire of March 4, 1964, resulted in an insurance loss of $82,000.00. The property was sold for $10,000.00. Of this $92,000.00 the Nolens obtained but $4,000.00 which was the amount considered as payment for the loss of the Nolens' personal destroyed in the fire. The insurance policies on the property named the Nolens as the beneficiaries and contained a mortgage clause in favor of the First National Bank. Subse-

quent to the fire, after proof of loss had been submitted by Nolens, Hall advised the agent of his interest, and requested his name be included on the checks. The agent prepared back dated endorsements to show Hall as an additional insured. Checks for the losses were made payable to the Nolens, Hall and the Bank, and were delivered to Hall. As previously noted, during this period of time subsequent to the fire, Nolen was not only working for Hall but also residing with the Halls.

Nolen endorsed the insurance check and allowed Hall to retain the check. The indebtedness of the Lantern House was concluded and the remainder of the proceeds have been unaccounted for.

In September, 1961, the Nolens gave the Halls a quit claim deed. Nolen asserts the deed was blank at the time he gave it to Hall and its purpose was to assist Hall in portraying a brighter financial picture in dealings unrelated to the restaurant or to the Nolens. In any event, the deed is acknowledged before a notary and Nolen does not deny his signature. The deed was not recorded until June 11, 1964, some 96 days after the fire and on the same day that Hall conveyed the property. From 1961 to 1964, the Nolens resided on the property, operated their partnership and made payments upon the indebtedness for which they were presumably liable.

Subsequent to the commencement of this suit, the Nolens were divorced.

This suit was filed in 1965 and after pleadings filed by defendants, the parties agreed, and the court ordered, that auditors be appointed. The parties entered into a stipulation wherein the issues were to be decided by the court on Statement of Facts, evidence as received by depositions, audit and supplemented accounts. Under the stipulation the court was to decide the following issues:

"The question of the extent, if any, and the purport of the fiduciary relationship between James O. Hall and William O. Nolen. In addition to the question of relationship, the factual question of the breach of the relationship, if one is found to exist." As auxiliary issues to this fundamental question, three (3) sub-questions are to receive the attention of the Court:

(a) The amount of capital contributions of James O. Hall?

(b) What was the partnership relationship between Janet Nolen and William O. Nolen and the physical properties, if any, constituting said co-partnership?

(c) The value, if any, of the physical extent of said co-partnership if one is found to exist immediately subsequent to the date of the fire, being March 4, 1964?"

While the court made no specific finding that there was a fiduciary

relationship between plaintiff and defendant Hall, there were findings that the Lantern House Restaurant was a partnership between Janet and William O. Nolen, that Hall had made contributions to the partnership in the amount of $43,122.11 and had received $48,477.89 in excess of that amount from the insurance and sale of the premises. The court found that the partners were to participate in the $48,447.89 by payment of that amount by Hall, one half to each Janet and plaintiff, and entered judgment for plaintiff against Hall in the amount of $24,439.44. The court also found that the costs, including the fee of the accounting firm, should be assessed equally against Janet and plaintiff, and so assessed the costs.

Appellant urges that plaintiff's theory of recovery was based upon an alleged breach of a fiduciary relationship and points to the opening paragraph of the stipulation, contending that the evidence does not indicate that plaintiff has met the burden of proving the existence of a fiduciary or confidential relationship by clear, convincing, strong, unequivocal evidence. Special findings of fact are not necessary in either cases at law tried without a jury or cases in equity, to support a judgment or decree. Ill. Rev. Stat. ch. 110, par. 64(3)(4).

■■ With appellant's contention we cannot agree. A review of the stipulated documents clearly indicates that Hall had a confidential relationship with Nolen. Hall exercised control over the activities of the Nolens far beyond that expected of a father-in-law. He was the financial director of the Nolens, and wanted to provide for his daughter, and Nolen was quite willing for him to assist. The record is replete with instances where Nolen signed his name to documents with little other reason than Hall instructed him to do so. It is difficult to conceive of an individual signing over his interest in property to another and yet remain on the premises and make payments on indebtedness on the property conveyed. It is easy to comprehend how one could endorse a check and give it to one's father-in-law when one was living in the house of the father-in-law and dependent upon the father-in-law for his livelihood. A fiduciary or confidential relationship exists where by reason of friendship, agency, business association and experience, trust and confidences are reposed by one person in another, who as a result gains an influence and superiority over him. (*Steimmitz v. Kern,* 375 Ill. 616, 32 N.E.2d 151.) The relationship does not arise merely from the fact that the dominant party was the father-in-law and father of the servient parties, but depends upon all the facts of the particular case. (*Bremer v. Bremer,* 411 Ill. 454, 104 N.E.2d 299; *Clark v. Clark,* 398 Ill. 592, 76 N.E.2d 446.) But, factors to be considered do include the degree of relationship, as well as disparity in age and business experience, and the extent to which the

allegedly servient party entrusts the handling of his affairs to the other. (*Kester v. Crilly*, 405 Ill. 425, 91 N.E.2d 419.) The evidence is clear that there did exist a confidential fiduciary relationship between Hall and Nolen.

■■■ It is also quite clear that the restaurant was a partnership between Nolen and his wife. All the tax records and treatment of the business until the fire are consistent with that relationship.

The court had jurisdiction to adjudicate this controversy, *Lawn Savings & Loan Ass'n. v. Quivere*, 81 Ill.App.2d, 304 225 N.E.2d 683 1967.

We therefore affirm the judgment and decree.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.