THE COUNTY OF COOK, Plaintiff-Appellant, *v.* EDWARD J. BARRETT *et al.*, Defendants-Appellees.

First District (3rd Division) No. 60121

Opinion filed December 30, 1975.—Rehearing denied April 12, 1976.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Paul P. Biebel, Jr., Frederic B. Weinstein, and John A. Dienner III, Assistant State's Attorneys, of counsel), for appellant.

Daniel Andrew Gallagher, of Chicago, for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

This is an appeal from the dismissal of the plaintiff's amended complaint for failure to state a cause of action.

The County of Cook filed a complaint and an amended complaint in chancery against former County Clerk, Edward J. Barrett, seeking the declaration of a constructive trust and an accounting for bribes allegedly received by him while he held office. Also named as defendants were the sureties on Barrett's official bond, the Fidelity and Deposit Company of Maryland and the United States Fidelity and Guaranty Company. The defendants filed motions to strike which were granted. In dismissing the action the chancellor ruled that:

"* * * a cause of action of this kind, by a public body to recover a bribe or kickback paid to one of its officers or employees or agents, as a matter of law cannot be maintained."

The amended complaint was composed of three counts. The County represented that Barrett served as the elected Clerk of Cook County from 1956 through 1970, a position of trust imposing obligations to faithfully perform the duties of office in the interest of the people of Cook County and not for the incumbent's personal gain. His salary for the position was fixed by law and was to be his "only compensation for services rendered in the capacity of County Clerk, or any other capacity." (Ill. Rev. Stat. 1969, ch. 53, par. 49.) Throughout the period of Barrett's tenure, the County Board of Commissioners at various times purchased and rented voting machines for use in elections. The board acted on the basis of contracts and proposals submitted and recommended by Barrett. By virtue of his office and influence with the board, his recommendations were "tantamount to the acceptance" of the proposals tendered by him. During this same time, he was also charged with the responsibility to care for voting machines in County custody which included the discretion to award contracts of insurance on the machines.

Count I charged that Barrett abused his position of trust by employing it to seek secret personal gains from the Shoup Voting Machine Corporation, in that he caused Shoup "* * * to secretly pay him money that constituted fees and/or allowances and/or bribes," as a consequence of which the County paid considerably more money for the voting machines purchased and rented from Shoup than it would

have otherwise. It was alleged that these payments from Shoup to Barrett amounted to approximately $180,000 for the years 1967-1970 but were unknown for previous years and a detailed accounting was needed to determine the exact figure for the entire period covered by the complaint. The plaintiff prayed that Barrett be declared a constructive trustee for the citizens and taxpayers of the County for the amounts received by him from Shoup, and that he be required to account to the County for those sums.

Count II also prayed for a declaration of constructive trust and for an accounting, but arose from a different group of transactions. The remedy was invoked to recover secret payments received by Barrett from Arthur Gallagher & Company, an insurance agency, in connection with his award of insurance contracts on County voting machines to completely unknown, that it had been approximated for 1967 to 1970 that the amount of these payments for the period 1956 to 1967 was completely unknown, that it had been approximated for 1967 to 1970 at $6,000, but that a detailed accounting was necessary to discover the exact figure by which the defendant had been unjustly enriched.

Both Count I and Count II contained a number of parallel paragraphs setting forth allegations to justify an equitable accounting. In addition to averments that the arrangements between Barrett and Shoup and Barrett and Gallagher caused the County to pay more than necessary for their services and depleted its treasury by undetermined amounts, it was charged that the accounts would be complicated and that exhaustive discovery was required because of the secret and sophisticated nature of the transactions and the absence of written records concerning them.

The final count was against the sureties on the bonds Barrett had given for the faithful performance of the duties of his office. It prayed judgment on the bonds for the amount wrongfully and unlawfully withheld from the County by Barrett. The sureties filed a separate motion to strike and dismiss, but they offered no independent grounds, merely adopting the reasons asserted by Barrett in his own motion.

Both in that motion and in his brief on appeal, Barrett has suggested numerous reasons why the County cannot recover from him. He contends that the County is entitled only to fees and allowances which are legally collected, that to allow recovery by a public body of bribes or kickbacks paid to its officers would be against public policy; that the County alleged no damage and suffered none, that no money moved from the County to him, that if any money was paid it was paid by Shoup and Gallagher not by the County, and that since no money moved out of the County treasury it could not have been depleted; that the

complaint did not allege that he had been unjustly enriched at the expense of the County or that in the absence of bribery the County would have paid less for voting machines or insurance. Attacking the equitable jurisdiction generally, he suggests that the facts alleged in the amended complaint did not warrant the grant of equitable relief and that there was an adequate remedy at law. Attacking the constructive trust doctrine specifically he contends that its application to one in his position would be unwarranted and unprecedented. It would be pointless to attempt to treat these contentions seriatim. We therefore will address them only insofar as they pertain to our discussion of the broad question raised by the judgment of the trial court: whether the allegations of the complaint stated a cause of action for a constructive trust.

■■ A constructive trust arises not by any agreement or understanding of the parties but by operation of law and is imposed upon grounds of public policy, to prevent a person from holding for his own benefit that which he has gained by reason of a special trust or confidence reposed in him by an innocent party. (*Tarpoff v. Karandjeff* (1964), 51 Ill.App.2d 454, 201 N.E.2d 549.) Stated most succinctly, the purpose of the remedy is to prevent unjust enrichment. *Streeter v. Gamble* (1921), 298 Ill. 332, 131 N.E. 589.

The particular circumstances in which equity will impress a constructive trust are "* * * as numberless as the modes by which property may be obtained through bad faith and unconscientious acts." (4 Pomeroy's Equity Jurisprudence § 1045, at 97 (5th ed. 1941).) The barriers to its effective operation are few. The form of the property claimed determines nothing, since a constructive trust will extend to reach real and personal property, choses in action and funds of money. (4 Pomeroy's Equity Jurisprudence § 1044 (5th ed. 1941).) To make out a case a plaintiff must allege facts which disclose either actual or constructive fraud or an abuse of a confidential relationship. It is the latter situation with which this case is concerned.

■■ At all times and for all the transactions pertinent to the complaint Barrett was the fiduciary of the people of Cook County. As an elected public official he held a position of the highest public trust. (*People v. Bordeaux* (1909), 242 Ill. 327, 89 N.E. 971; *Williams v. State* (1957), 83 Ariz. 34, 315 P.2d 981; 63 Am.Jur.2d *Public Officers* § 275 (1972).) In the transactions with Shoup and Gallagher, Barrett acted as the County's agent, negotiating terms of purchase and recommending County action. An agent is fiduciary to his principal and the relation is treated generally the same, and with virtually the same strictness, as that of trustee and beneficiary. *Doner v. Phoenix Joint Stock Land Bank* (1942), 381 Ill. 106, 45 N.E.2d 20; Restatement (Second) of Agency § 13 (1958).

■■ In deciding this appeal, it is not necessary to locate the perimeters of the fiduciary obligations due the public from their elected officials. It is sufficient to recognize that, when such an official acts as agent for the public body in business transactions, he owes to his principal duties of loyalty and good faith at least equal to those required of a private fuduciary in like circumstances. (Ill. Rev. Stat. 1971, ch. 102, par. 3; *Burton Township v. Speck* (1966), 378 Mich. 213, 144 N.W.2d 347.) The obligations of a person who occupies the latter category are such that he must not place himself in a position which is adverse to that of his principal during the continuance of the agency. (*James C. Wilborn & Sons, Inc., v. Heniff* (1968), 95 Ill.App.2d 155, 237 N.E.2d 781; *Moore v. Pinkert* (1961), 28 Ill.App.2d 320, 171 N.E.2d 73.)

> "[A]n agent should not unite his personal and his representative characters in the same transaction; and equity will not permit him to be exposed to the temptation, or brought into a situation where his own personal interests conflict with the interests of his principal and with the duties which he owes to his principal."

(3 Pomeroy's Equity Jurisprudence § 959, at 819 (5th ed. 1941).) See also *Rieger v. Brandt* (1928), 329 Ill. 21, 160 N.E. 130; *Commonwealth S.S.Co. v. American Shipbuilding Co.* (N.D. Ohio 1912), 197 F. 780; *Bone v. Hayes* (1908), 154 Cal. 759, 99 P. 172.

■■ The remedy for breach of this duty is simple and salutary. Since a fiduciary is bound to act solely for the benefit of his principal, equity will intervene to prevent him from accruing any advantage—however innocently—from transactions conducted in behalf of the principal. So, when a fiduciary, who has acted for his beneficiary or principal, receives a gift, or bonus or commission from a party with whom he has transacted business, that benefit may be recovered from him by the beneficiary of the fiduciary relationship. (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill.2d 398, 312 N.E.2d 605; Bogert, Trusts and Trustees § 543(P) (2d ed. 1960) *Bank of America National Trust & Savings Association v. Ryan* (1962), 207 Cal.App.2d 698, 24 Cal. Rptr. 739; *Slay v. Burnett Trust* (1945), 143 Tex. 621, 187 S.W.2d 377; *Risvold ex rel. Clearly Hill Mines Co. v. Gustafson* (1941), 209 Minn. 357, 296 N.W. 411; *In re Wechsler's Estate* (1939), 171 Misc. 738, 13 N.Y.S. 2d 940.) In *Janes v. First Federal Savings & Loan Association* it was alleged that the defendant lending bank procured title insurance for its borrower on mortgaged property and charged the borrower the full price of that insurance, but subsequently received and retained a ten percent rebate from the title insurance company. The reviewing court ruled that under such facts the bank held the rebate upon a constructive trust from the borrower as beneficiary in the absence of the borrower's express con-

trary authorization. The court quoted approvingly from the American Law Institute restatements of the law of restitution and agency. The Restatement of Restitution, section 197 (1937), states:

"§ 197. BONUS OR COMMISSION RECEIVED BY FIDUCIARY. Where a fiduciary in violation of his duty to the beneficiary receives or retains a bonus or commission or other profit, he holds what he receives upon a constructive trust for the beneficiary.

*Comment*:

*a. Bribes and commissions.* The rule stated in this Section is applicable not only where the fiduciary receives something in the nature of a bribe given him by a third person in order to induce him to violate his duty as fiduciary, but also where something is given to him and received by him in good faith, if it was received for an act done by him in connection with the performance of his duties as fiduciary. Thus, if a trustee, or corporate officer, or an agent entrusted with the management of property insures the property in a company of which he is an agent, and he receives from the company a commission for placing the insurance, he is accountable for the commission so received and holds it upon a constructive trust for his beneficiary (see Restatement of Trusts, sec. 170, comment *n*; Restatement of Agency, sec. 388, Comment *a*).

\* \* \*

*c. Where no harm to beneficiary.* The rule stated in this Section is applicable although the profit received by the fiduciary is not at the expense of the beneficiary. Thus, where an agent to purchase property for his principal acts properly in making the purchase but subsequently receives a bonus from the seller, he holds the money received upon a constructive trust for his principal. The rule stated in this Section \* \* \* is not based on harm done to the beneficiary in the particular case, but rests upon a broad principle of preventing a conflict of opposing interests in the minds of fiduciaries, whose duty it is to act solely for the benefit of their beneficiaries."

The Restatement (second) of Agency, section 388 (1958), states:

"§ 388. DUTY TO ACCOUNT FOR PROFITS ARISING OUT OF EMPLOYMENT.

Unless otherwise agreed, an agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal.

*Comment*:

*a.* Ordinarily, the agent's primary function is to make profits

> for the principal, and his duty to account includes accounting for any unexpected and incidental accretions whether or not received in violation of duty. Thus, an agent who, without the knowledge of the principal, receives something in connection with, or because of, a transaction conducted for the principal, has a duty to pay this to the principal even though otherwise he has acted with perfect fairness to the principal and violates no duty of loyalty in receiving the amount. See sec. 203 of the Restatement of Trusts."

Upon examination, Barrett's argument that the remedy of a constructive trust has not been previously and as a matter of public policy should not now be applied to public officers accepting bribes reduces itself to the protest that no precedent exists which is squarely on point. Admittedly, up to the time his brief was filed, no Illinois case had directly applied the doctrine in this manner, although the approach has received indirect endorsement in obiter dictum. (See *People v. Bordeaux.*) Since then, however, a constructive trust has been imposed upon public officials (members of the Illinois legislature) and monies allegedly received by them in violation of their fiduciary relationship and duties. (*Fuchs v. Bidwell* (1975), 31 Ill.App.3d 567, 334 N.E.2d 117.) But the mere fact that no precedent could be found in which such relief had been granted under a similar state of facts is no reason for a court of chancery to shrink from action. (*Thorne v. Continental Bank* (1958), 18 Ill.App.2d 163, 151 N.E.2d 398.) The rule that equity looks to substance and not to form acquires special force in the realm of constructive trust.

> "Wherever equity finds such a wrongful holding, it will give relief, whether the type of injustice is new or old. The court does not restrict itself by naming all the specific forms of inequitable holding which will move it, but rather reserves complete liberty to apply this remedy to whatever knavery human ingenuity can invent." Bogert, Trusts and Trustees § 471 (2d ed. 1960).

Despite the dearth of Illinois law on the subject, there is no logical reason why the remedy should not be extended to public officers in appropriate cases, the same as it would reach private trustees, employees and agents. Indeed, such application is no novelty. (*United States v. Carter* (1910), 217 U.S. 286, 54 L.Ed. 769; *United States v. Drumm*, 329 F.2d 109 (1st Cir. 1964); *City of Jersey City v. Hague* (1955), 18 N.J. 584, 115 A.2d 8; *City of Boston v. Santosuosso* (1940), 307 Mass. 302, 30 N.E.2d 278.) The facts of *United States v. Carter* are especially illustrative. In that case the defendant, a captain in the Army Corps of Engineers, served as officer in charge of a vast public works project. His

position carried with it large discretion, and numerous options were reserved to him as the government's agent in devising projects, drafting specifications, supervising and accepting work. It was alleged that he exercised this discretion uniformly to create profits for certain contractors at the expense of the United States and received in return secret cash payments exceeding $500,000. The Supreme Court decided that *Carter* had violated his fiduciary duty to the government and that he therefore held the secret payments in trust for the United States. Proof of the particular methods by which he had augmented the contractor's profits or the effectiveness of those methods was deemed immaterial to the government's case.

Barrett attempts to distinguish *Carter* as a suit in which the government paid inflated prices and traced the inflated sums into the hands of its employee, but this distinction is refuted by the court's own language:

> "It is immaterial  *  *  *  whether the complainant was able to show any specific abuse of discretion, or whether it was able to show that it had suffered any actual loss by fraud or otherwise.  *  *  *  It would be a dangerous precedent to lay down as law that unless some affirmative fraud or loss can be shown, the agent may hold on to any secret benefit he may be able to make out of his agency. The larger interests of public justice will not tolerate, under any circumstances, that a public official shall retain any profit or advantage which he may realize through the acquirement of an interest in conflict with his fidelity as an agent." (217 U.S. 286, 305-06, 54 L.Ed. 769, 775-76.)

The defendants' attempted distinctions of the cases cited earlier in this opinion also are futile. It would be absurd to predicate the availability of the remedy upon the manner or timing of payment of the secret benefit which evidences a fiduciary's conflict of interest, when the relation of that benefit to the performance of tasks for his principal is otherwise undisputed.

■■■ In related contentions contained in both his pleadings and brief, Barrett assails the County's complaint for its failure to allege damage. He states that the averments that the County paid excess sums because of his misfeasance are speculative and that there was no averment that he was unjustly enriched at the County's expense. The absence of an allegation of damage is immaterial. A constructive trust is not an action for "recovery" or compensation under any theory of contract or tort. It is a strict equitable doctrine applied to cure a fiduciary's breach of his duty of loyalty by erasing the source of his conflict of interest, and transferring it to the innocent beneficiary. Bad faith is not an essential

632

element of disloyalty (*Slay v. Burnett Trust*), and good faith is no defense to the charge. Courts are not interested in a fiduciary's particular motive for accepting a payment or gift, but rather with the general effect of such payments or gifts. Nor are courts concerned with the question of actual damage to the beneficiary. *In re Bond & Mortgage Guarantee Co.* (1952), 303 N.Y. 423, 103 N.E.2d 721.

■■■ The defendant suggests, too, that the County "is not entitled to money which is not legally collected and such money is the property of the person from whom it has been exacted." This contention was invited by the broad language of the complaint, which termed the payments by Shoup and Gallagher "fees and/or allowances and/or bribes." It has been held that where public officers charge greater fees for the performance of ministerial functions than those prescribed by law, retaining the portion wrongfully exacted, the payors are entitled to the return of so much of the fee as is unlawful, and the public body, in the absence of statutory authority requiring that such funds be deposited in the public treasury, has no greater claim to the excess charge than the officer who fraudulently collected it. This is the gist of the several cases cited by the defendant. (*Tarrant County v. Rogers* (Tex. Civ. App. 1910), 125 S.W. 592; *Bell v. Martin* (1913), 64 Ore. 519, 130 P. 1126; *Richardson v. Morrison* (1929), 101 Cal. App. 418, 281 P. 726.) However, the rule has no pertinence to cases of bribery. The payments alleged in this case came to Barrett personally and were not treated either by the payors or the recipient as fees or allowances due the County. So, Barrett is correct insofar as he contends that the County is not "entitled" to the money, *i.e.*, it never held a claim at law on the funds. But that fact furnishes the very reason for the County's resort to equity to claim the money. Barrett errs in his view that Shoup and Gallagher retained a superior right to the funds. We know of no action cognizable at law or equity for the return of illegal payments knowingly and willingly made.

The defendant argues that since the County seeks only a money judgment and the accounts are not complicated and discovery is unnecessary, it would be improper for chancery to exercise jurisdiction over this controversy and thus deprive him of his constitutional right to a jury trial. This argument minimizes the underlying reason for equity jurisdiction—the trust aspect of the controversy.

■■■ The County seeks, first and foremost, a declaration of the people's beneficial interest in and the right to possess the secret profits accrued by Barrett in breach of his fiduciary duty of loyalty. The recognition, execution and control of a trust or equitable interest is a matter exclusively within the jurisdiction of equity. (1 Pomeroy's Equity

Jurisprudence § 137 (5th ed. 1941).) The jurisdiction is original, inherent and plenary. (*Stone v. Baldwin* (1947), 331 Ill.App. 421, 73 N.E. 2d 635; *Village of Brookfield v. Pentis* (7th Cir. 1939), 101 F.2d 516.) As Barrett himself has argued, the County had no claim at law on money which came to him from third persons as bribes. Nor can Shoup and Gallagher claim these funds. The very conception of an equitable interest requires the simultaneous existence of two estates or ownerships in the same subject matter, the one legal, vested in one person, and recognized by a court of law, the second equitable, in another person, and recognized by a court of equity. Under the circumstances alleged in this case, only equity, applying this doctrine of the divisibility of legal and beneficial ownership, is capable of doing substantial justice between the parties.

■■ When chancery exercises its exclusive jurisdiction to declare the County's equitable interest, it must then afford, as an incident, the complete remedy obtainable through an accounting. Where equity has jurisdiction for the purpose of granting equitable relief, the court may determine all issues of the case, whether legal or equitable (*Wiebrecht v. Shapiro* (1973), 54 Ill.2d 527, 301 N.E.2d 293; *Patterson v. Patterson* (1911), 251 Ill. 153, 95 N.E. 1051) including damages. *Peterson v. Yacktman* (1960), 25 Ill.App.2d 208, 166 N.E.2d 452.

The many cases cited by the defendant only serve to illustrate these distinctions. They were all accounting actions in which plaintiffs sought to invoke equity jurisdiction even though their primary rights and remedies were in law, usually through an action for money had and received. Such being the case, the chancery courts inquired into the complexity of the accounts and the need for extensive discovery. Where those factors were absent, plaintiffs were denied access to equity and remitted to their actions at law. (See, *e.g.*, *County of Clinton v. Schuster* (1876), 82 Ill. 137; *Ramsay v. County of Clinton* (1879) 92 Ill. 225; *County of Cook v. Davis* (1892), 143 Ill. 151, 32 N.E. 176; *Brauer v. Loughlin* (1908), 235 Ill. 265, 85 N.E. 283; *Forster v. Brown Hoisting Machinery Co.* (1914), 266 Ill. 287, 107 N.E. 588; *People v. Small* (1926), 319 Ill. 437, 150 N.E. 435.) *County of Cook v. Davis* contains a careful statement of the distinction. Davis was a county treasurer and invested county funds, but kept the interest for himself, contrary to law. The county filed a bill in equity for an accounting. In upholding the dismissal of the suit, the court said:

> "* * * [T]he recovery here sought is of a purely legal demand, for which, if appellee is liable at all, the recovery could be had in an appropriate action at law. If the money alleged to have been received and not accounted for came to his hands as treasurer,

and is by law secured to be paid by his official bond, suit at law could be maintained thereon. If he received funds not within the contract obligation of his bond, but which he is nevertheless bound by law to pay over to the county, an action at law affords ample remedy for enforcing the personal liability of appellee therefor * * *." (143 Ill. 151, 154.)

Neither of these situations obtains in the present case. The bribes allegedly received by Barrett did not come to him in his official capacity as County Clerk and he is not bound at law to pay the money to anyone.

Only one issue remains for our consideration. The original complaint asked an accounting for the period 1967 through 1970, but the amended complaint seeks an accounting for a much longer period, 1956 through 1970. Barrett expresses the belief that this change was made solely to justify an equitable accounting by fabricating issues of complexity and discovery, and his final contention is that laches and the five-year statute of limitations on civil actions (Ill. Rev. Stat. 1971, ch. 83, par. 16) bars any action the County would otherwise have for the years 1956 to 1967. We have already decided that the accounting is incidental to the exclusively equitable remedy of constructive trust. Our disposition of Barrett's final contention therefore affects only the scope of the litigation upon remandment.

The County argues that the statute of limitations was tolled by section 23 of the chapter on limitations (Ill. Rev. Stat., 1971, ch. 83, par. 23) which provides:

"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards."

The County alleged neither diligent oversight of Barrett during the years covered in the amended complaint nor any affirmative act of concealment by him. Ordinarily in cases of fraudulent concealment section 23 does not control unless the plaintiff could not have discovered the fraud through the exercise of ordinary diligence. Also, mere failure to disclose a fraudulent act usually does not suffice to show fraudulent concealment. There must be an accompanying affirmative act of concealment. However, these restrictions do not apply under the circumstances which gave rise to this cause of action. When a fiduciary relation prevails between persons, it is not necessary to the preservation of the beneficiary's rights that he diligently search for the fiduciary's fraud. (*Vigus v. O'Bannon* (1886), 118 Ill. 334, 8 N.E. 778.) Nor should the existence of an overt act of concealment by the fiduciary be dispositive. For so

long as one of the forms of trust relationship continues, the innocent beneficiary is disabled by the very nature of that relationship from acting to discover his fiduciary's misfeasance. We will not, through the application of a procedural technicality, contradict the very essence of the substantive law of trusts, which is that innocent beneficiaries may rely implicitly on the loyalty and good faith of their fiduciaries. We hold that no part of the County's action was barred by the statute of limitations.

Barrett's motion to dismiss admitted the well-pleaded factual allegations in the County's complaint. (*Logan v. Presbyterian-St. Luke's Hospital* (1968), 92 Ill.App.2d 68, 235 N.E.2d 851.) The allegations in Count I and Count II stated a cause of action for breach of a fiduciary duty and for a constructive trust, and they should not have been dismissed. Since the sureties have treated their liability on the performance bonds as contingent upon Barrett's personal liability, separate discussion of Count III is unnecessary. This count, also, should not have been dismissed. The judgment is reversed and the cause is remanded.

Reversed and remanded.

McNAMARA, J., concurs.

Mr. PRESIDING JUSTICE McGLOON, specially concurring:

I concur with the decision of the court to reverse the order of the Circuit Court of Cook County and remand the cause, but would make the following observations.

## I

The majority believes that defendant may be proven to have been a fiduciary of the people of Cook County from the allegations in the complaint that he was an elected public official and the County's agent in its dealings with Shoup and Gallagher. The fact that defendant may have been an elected official is, in my opinion, not crucial to our decision. The determinative factor is whether the particular facts alleged in the complaint could be proven to show that defendant was a fiduciary.

A fiduciary relationship may be created in many ways; an agency is but one relationship which creates fiduciary duties. The usual test for determining the existence of a fiduciary relationship is whether "confidence is reposed on one side and there is a resulting superiority and influence on the other side. It is not sufficient that confidence be reposed by one party, but the confidence must be actually accepted by the other party in order to constitute a fiduciary relationship." (*People ex rel. Barrett v. Central Republic Trust Co.* (1939), 300 Ill.App 297, 303.) Whether such a relationship exists between the parties depends upon all

the facts and circumstances of a particular case. *Nolen v. Hall* (1970), 130 Ill.App.2d 867.

The complaint in the instant case alleges, *inter alia*, that Barrett recommended to the Cook County Board of Commissioners that contracts for the purchase or rental of voting machines be awarded to Shoup, and that by virtue of Barrett's influence, "his recommendations of said contracts and proposals were tantamount to the acceptance thereof, as the action of the Cook County Board of Commissioners was in essence a mere formality." It is further alleged that between 1956 and 1970, the Cook County Board of Commissioners was authorized to and did purchase or rent over 1000 voting machines from Shoup. Similar facts are alleged concerning the purchase of insurance for the voting machines between 1956 and 1970.

In my opinion, the complaint contains allegations which may be proven to show that the County Board reposed its confidence in Barrett with regard to the voting machines and insurance contracts, and that Barrett accepted the confidence, thus creating a fiduciary relationship. It would not matter whether Barrett were an elected public official, a public employee, or a private person who had the confidence of the County Board in these matters. The relationship which if abused gives rise to an action for the declaration of a constructive trust involves a confidence reposed and accepted, as herein alleged. At trial upon remand, plaintiff would have to prove that Barrett had the confidence of the County Board, as opposed to being a person who merely made recommendations which may or may not have been followed as the Board saw fit.

The majority believes that every county official has a fiduciary relationship with the county, citing *People v. Bordeaux* (1909), 242 Ill. 327. Such a conclusion is warranted, but with the caveat that the relationship exists only when the official performs his statutory duties. If defendant had a statutory duty to recommend contracts to the County Board, or to award contracts himself, he would be a fiduciary to the County with respect to such contracts. In the absence of a statutory provision which would govern defendant's alleged course of conduct herein, defendant could not properly be categorized as a fiduciary by nature of his public office; he would have been acting in a personal capacity. Defendant's fiduciary relationship with the Cook County Board of Commissioners with respect to the voting machine and insurance contracts would have arisen as a matter of fact based upon the confidence reposed and accepted, rather than as a matter of law because of defendant's elected office.

## II

The majority believes that the bare existence of a fiduciary relationship between plaintiff and defendant is sufficient to invoke the fraudulent concealment exception to the statute of limitations (Ill. Rev. Stat. 1971, ch. 83, par. 23), citing *Vigus v. O'Bannon* (1886) 118 Ill. 334, for the following proposition of law:

> "When a fiduciary relation prevails between persons, it is not necessary to the preservation of the beneficiary's rights that he diligently search for the fiduciary's fraud. (*Vigus v. O'Bannon* (1886), 118 Ill. 334, 8 N.E. 778.) * * * For so long as one of the forms of trust relationship continues, the innocent beneficiary is disabled by the very nature of that relationship from acting to discover his fiduciary's misfeasance."

I believe that the majority has oversimplified *Vigus*, wherein our Supreme Court wrote:

> "The rule, that, in cases of fraud, the Statute of Limitations begins to run only from the time of the discovery of the fraud, will not apply, where the party, affected by the fraud, might, with ordinary diligence, have discovered it. But the failure to use such diligence may be excused, where there exists some relation of trust and confidence, as, principal and agent, client and attorney, *cestui que trust* and trustee, between the party committing the fraud and the party, who is affected by it, rendering it the duty of the former to disclose to the latter the true state of the transaction, *and where it appears, that it was through confidence in the acts of the party, who committed the fraud, that the other was prevented from discovering it.*" (Emphasis added.) (118 Ill. 334, 346.)

It is my belief that *Vigus* holds that the statute of limitations may be tolled if there is a fiduciary relationship between the parties *and* the reliant party was in fact prevented from discovering the wrongful act because of the fiduciary relationship. By treating the latter element as if it exists as a matter of law, the majority fails to recognize that there may be a question of fact which must be alleged and proven on remand. See generally Annot., Fiduciary or Confidential Relationship as Affecting Estoppel to Plead Statute of Limitations, 45 A.L.R.3d 630 (1972).

I cannot agree with the majority on the scope of the proceedings upon remand. On remand, plaintiff should be given the opportunity to raise the issue of whether defendant should be prevented by section 23 from raising the affirmative defense of the statute of limitations contained in section 16. (Ill. Rev. Stat. 1971, ch. 83, pars. 16 and 23.)

638

Plaintiff would have the burden to allege and prove that defendant was the fiduciary of Cook County and that Cook County was prevented from discovering defendant's wrongful acts because of the fiduciary relationship.